568 S.E.2d 5

**Becky L. GOUNDRY, Plaintiff Below, Appellant,**

v.

**Sara WETZEL–SAFFLE, D.O., Individually, and Benwood Medical Clinic, Inc., Defendants Below, Appellees.**

No. 30092.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 19, 2002.

Decided March 1, 2002.

Dissenting Opinion of Justice McGraw Aug. 2, 2002.

---

Patricia A. Kurelac, Moundsville, for Appellant.

Karen E. Kahle, Melanie A. Morgan, Steptoe & Johnson, Wheeling, for Appellees.

PER CURIAM.

Becky L. Goundry, appellant/plaintiff below (hereinafter referred to as "Ms. Goundry"), appeals from an adverse summary judgment order entered by the Circuit Court of Marshall County. The circuit court granted summary judgment to Dr. Sara Wetzel–Saffle (hereinafter referred to as "Dr. Saffle"), and Benwood Medical Clinic (hereinafter referred to as "Benwood"), appellees/defendants below, by concluding that Ms. Goundry failed to produce an expert witness in her medical malpractice case against the defendants. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we affirm the decision of the Circuit Court of Marshall County.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On April 29, 1994, Ms. Goundry visited the medical office of Dr. Saffle,[1] complaining of ceased menstruation, stress, and tiredness. Ms. Goundry has alleged that during the visit Dr. Saffle performed a pregnancy test, as well as a pap smear examination.[2] According to Ms. Goundry, the pregnancy test was negative. Dr. Saffle diagnosed Ms. Goundry as having depression and amenorrhea.[3] Several medications were prescribed as a result of the diagnoses.

On May 18, 1994, Ms. Goundry again visited Dr. Saffle and complained that her menstrual cycle had not resumed. Dr. Saffle prescribed the drug DepoProvera. On July 19, 1994, Ms. Goundry visited Dr. Saffle's office a third time complaining of urination and back problems. Ms. Goundry alleged that during this visit she did not see Dr. Saffle. However, someone in the doctor's office gave her a prescription for the drug Prozac.

Ms. Goundry visited Dr. Saffle once again on August 22, 1994, with similar complaints regarding her ceased menstruation. Dr. Saffle diagnosed Ms. Goundry as having secondary amenorrhea,[4] and advised her to have an endometrial[5] biopsy. On September 30, 1994, the endometrial biopsy was performed at Dr. Saffle's office. Although the results of the biopsy were reported on October 4, 1994, Ms. Goundry was never informed of those results. The endometrial biopsy revealed blots, clots, and fragments of decidual-like tissue (evidence of pregnancy).[6]

During the early morning of November 9, 1994, Ms. Goundry contacted Dr. Saffle by phone and complained of abdominal pain and cramping. Dr. Saffle advised Ms. Goundry to visit her office immediately. Before Ms. Goundry could leave her home, she went into labor and gave birth to a male child.[7] The child is alleged to have been born prematurely with jaundice, hypoglycemia, and weighing less than 5 pounds.

In 1996, Ms. Goundry filed the instant action against Dr. Saffle and Benwood alleging medical malpractice in their failure to diagnose and treat her pregnancy. Ms. Goundry further alleged that she did not know she was pregnant until she actually

---

1. Dr. Saffle's medical office was on the premises of Benwood.

2. Dr. Saffle admits that a pap smear examination was done. However, Dr. Saffle contends that she did not perform a pregnancy test as Ms. Goundry allegedly assured her that pregnancy was not a possibility. In addition, while Dr. Saffle has admitted that a urine test was done, she has stated that the urine test was done for the purpose of ascertaining whether Ms. Goundry had some type of infection—not to determine pregnancy.

3. Amenorrhea is "the absence of menstruation." Mosby's Medical & Nursing Dictionary, 48 (2d ed. 1986).

4. Secondary amenorrhea "is the cessation of menstrual cycles once established." Id.

5. Endometrial refers to the endometrium or uterine cavity. See Mosby's at 396.

6. Dr. Saffle alleged that she never saw the results of the endometrial biopsy.

7. The fire department for the City of Wheeling responded to a 911 call from Ms. Goundry's apartment and assisted in delivering the child.

gave birth.[8]

After a period of discovery in the case, Dr. Saffle and Benwood moved for summary judgment. The trial court granted summary judgment solely on the basis that Ms. Goundry failed to produce a medical expert witness to establish the standard of medical care. It is from this adverse ruling that Ms. Goundry now appeals.

## II.

## STANDARD OF REVIEW

We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Although our review is *de novo,* we have pointed out that "[a] trial court is vested with discretion under W. Va.Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." Syl. pt. 8, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997).

## III.

## DISCUSSION

The legal issue presented is whether the circuit court abused its discretion by dismissing Ms. Goundry's case because she failed to produce a medical expert witness to testify to the applicable standard of care. Our cases have made clear that "[i]t is the general rule that in medical malpractice

cases negligence or want of professional skill can be proved only by expert witnesses." Syl. pt. 2, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964). *See* Syl. pt. 1, *Farley v. Meadows*, 185 W.Va. 48, 404 S.E.2d 537 (1991). Under W. Va.Code § 55–7B–7 (2000), it is expressly provided that "[t]he applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses *if required by the court.*" (Emphasis added).[9] In other words, in medical malpractice cases "the circuit court has the discretion to determine whether the plaintiff is required to obtain an expert witness[.]" *Short v. Appalachian OH–9, Inc.*, 203 W.Va. 246, 253, 507 S.E.2d 124, 131 (1998).

In the instant proceeding, Ms. Goundry's complaint and her deposition testimony allege that she was given a pregnancy test by Dr. Saffle during the first visit to the doctor's office. Ms. Goundry further alleged in her deposition that several days after taking the pregnancy test, someone from Dr. Saffle's office telephoned her and stated that the pregnancy test was negative. Dr. Saffle disputes these facts. According to Dr. Saffle, Ms. Goundry was not given a pregnancy test because she denied the possibility of being pregnant. In the final analysis, this case presents two competing theories. Ms. Goundry claims to have been given a pregnancy test and Dr. Saffle claims that no pregnancy test was given.[10] The circuit court found

---

8. Ms. Goundry has two other children, a daughter in college and a son in high school. Ms. Goundry has been twice married and twice divorced. During her deposition, she indicated that, although she was married to her second husband when she gave birth to the unexpected infant, she allowed another man to be listed as the father on the child's birth certificate. Ms. Goundry divorced her second husband about a month after the unexpected birth of the infant.

9. "In *McGraw v. St. Joseph's Hospital*, 200 W.Va. 114, 488 S.E.2d 389 (1997), we approved of the legislature granting trial courts discretion, under W. Va.Code § 55–7B–7, to require expert testimony in medical professional liability cases." *Daniel v. Charleston Area Med. Ctr., Inc.*, 209 W.Va. 203, 207–8 n. 2, 544 S.E.2d 905, 909–10 n. 2 (2001) (Davis, J., concurring).

10. Obviously the two competing theories present disputed material issues of fact. Under our general rule summary judgment would be inappropriate when a case presents material issues of fact that are in dispute. However, medical malpractice cases present an exception to the general rule. Our cases have made clear that "[w]hen the principles of summary judgment are applied in a medical malpractice case, one of the threshold questions is the existence of expert witnesses opining the alleged negligence." *Neary v. Charleston Area Med. Ctr., Inc.*, 194 W.Va. 329, 334, 460 S.E.2d 464, 469 (1995) (per curiam). Thus, once a trial court makes the discretionary determination that a plaintiff must produce a qualified medical expert in a medical malpractice case, underlying disputed material issues of fact cannot be reached until the plaintiff has produced a qualified medical expert. *See Short*

that these conflicting theories involved complex medical issues that demanded expert medical testimony to assist the jury.[11] Ms. Goundry contends that the common-knowledge exception recognized in *Totten v. Adongay*, 175 W.Va. 634, 337 S.E.2d 2 (1985), controls this case. Thus, under *Totten*, she was not required to produce a medical expert witness. We disagree.

■ In *Totten* the plaintiff brought a medical malpractice action against a physician who failed to diagnose a broken bone in the plaintiff's wrist. During the trial of the case, the circuit court granted a directed verdict (now judgment as a matter of law) because the plaintiff failed to produce a medical expert to establish the medical standard of care and a breach thereof. We reversed the trial court's ruling. In so doing we held in syllabus point 4 of *Totten* that

> In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's prima facie showing of negligence.[12]

*Totten* opined that the plaintiff needed no medical expert witness because the evidence "would permit a jury to conclude that failure to detect a fracture admittedly shown on an x-ray of the injured area was the result of a breach of due care or lack of the minimum degree of skill commensurate with the circumstances." *Totten*, 175 W.Va. at 638, 337 S.E.2d at 6.

■ In the instant proceeding, the circuit court rejected Ms. Goundry's reliance on *Tot-*

*ten's* common-knowledge exception as follows:

> The facts of the instant case cannot be easily analogized to those in *Totten*. In the instant case, the evidence [is] not simplistic and the standard of care is not straightforward.... Whether or not a pregnancy test is given to a patient who has denied the possibility of pregnancy is a standard that must be established by an expert and is not within the common knowledge of a lay juror. Also, whether or not a pregnancy test should have been offered is a medical question that relates to standard of care and requires expert opinion.

We agree with the trial court's reasoning and find no abuse of discretion in requiring Ms. Goundry to produce a medical expert. *See Banfi v. American Hosp. for Rehab.*, 207 W.Va. 135, 529 S.E.2d 600 (2000) (affirming summary judgment for defendants, in part, when plaintiff failed to present expert testimony in support of its claims that defendants were negligent by failing to restrain patient and by allegedly misdiagnosing her injuries after her fall); *Moats v. Preston County Comm'n*, 206 W.Va. 8, 521 S.E.2d 180 (1999) (requiring plaintiff to utilize a medical expert witness to establish that defendant deviated from the standard of care with regard to its actions during an involuntary commitment proceeding); *Hapchuck v. Pierson*, 201 W.Va. 216, 495 S.E.2d 854 (1997) (per curiam) (affirming summary judgment when plaintiff failed to produce medical expert testimony on the issue of a physician's duty to warn); *Neary v. Charleston Area Med. Ctr., Inc.*, 194 W.Va. 329, 460 S.E.2d 464 (1995) (per curiam) (affirming summary judgment for defendant when plaintiff failed to submit medical expert testimony in support of his failure to warn claim).

---

v. *Appalachian OH–9, Inc.*, 203 W.Va. 246, 507 S.E.2d 124 (1998) (affirming summary judgment when plaintiff failed to produce qualified medical expert); *Hicks v. Chevy*, 178 W.Va. 118, 358 S.E.2d 202 (1987) (per curiam) (affirming summary judgment where plaintiff failed to produce any medical expert).

**11.** Dr. Saffle and Benwood produced a medical expert witness.

**12.** *See also* Syl. pt. 9, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997) ("The standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony, because the jury is competent from its own experience to determine and apply a reasonable care standard.").

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we affirm the circuit court's order granting summary judgment to Dr. Saffle and Benwood.

Affirmed.

McGRAW, Justice, dissenting.

(Filed Aug. 2, 2002)

The majority in this case has done nothing less than to effectively grant defendants the prerogative to redefine the plaintiff's complaint. An axiom of the civil law is that a plaintiff is, in nearly every respect, the master of his or her own complaint. As one court has recognized, "[i]t takes little imagination to see the mischief that might result from allowing a party to define the contours of his adversaries claim . . . ." *American Tobacco Co. v. Evans,* 508 So.2d 1057, 1060 (Miss.1987). Such mischief is nowhere more readily apparent than in the present case.

As the Court's opinion freely recites, "this case presents two competing theories." Importantly, the gravamen of Ms. Goundry claim is not that Dr. Saffle was negligent in failing to order a pregnancy test; rather, the plaintiff has averred that such a test was performed, and that the results were erroneous. Thus, the focus of Ms. Goundry's cause of action is entirely upon whether, and in what manner, the purported pregnancy test was conducted. While Dr. Saffle disputes this claim by asserting that no pregnancy test was ever performed, purportedly because Ms. Goundry had indicated that pregnancy was impossible, the question of whether such testing was required under the applicable standard of care is irrelevant outside of Dr. Saffle's rendition of events. The plaintiff's case will obviously rise or fall based upon the factual determination as to whether a pregnancy test was, in fact, performed. I therefore see no reason why the plaintiff should be required to muster an expert to address a standard of care that is extraneous to her case. To impose such a requirement impermissibly recasts the plaintiff's case based solely upon the defendant physician's rendition of events.

I therefore respectfully dissent.