576 S.E.2d 527

**Jerry and Kathy WITHROW, Natural Parents and Guardians of Rebekah Lynn Withrow, a Minor, and Jerry Withrow, Individually, and Kathy Withrow, Individually, Plaintiffs Below, Appellants**

v.

**WEST VIRGINIA UNIVERSITY HOSPITALS, INC., a West Virginia Corporation, d/b/a Ruby Memorial Hospital, and the University of West Virginia Board of Trustees, Defendants Below, Appellees.**

No. 30463.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2002.

Decided Dec. 3, 2002.

Dissenting Opinion of Justice Starcher Dec. 10, 2002.

Joshua I. Barrett, L. Dante DiTrapano, Mary S. Blaydes, DiTrapano, Barrett & Di-Piero, and Richard D. Lindsay, Tabor, Lindsay & Associates, Charleston, for the Withrows.

Stephen R. Brooks, Christine S. Vaglienti, Flaherty, Sensabaugh & Bonasso, Morgantown, for West Virginia University Hospitals, Inc.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on August 6, 2001. In that order, the circuit court granted summary judgment in favor of the appellee and defendant below, West Virginia University Hospitals, Inc., a West Virginia corporation, d/b/a Ruby Memorial Hospital (hereinafter "WVUH"), in this medical malpractice action filed by the appellants and plaintiffs below, Jerry and Kathy Withrow, individually and as the natural parents and guardians of Rebekah Lynn Withrow.[1] In this appeal, the Withrows contend that genuine issues of material fact exist precluding summary judgment.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the circuit court's final order is affirmed.

## I.

### FACTS

In 1992, Rebekah Lynn Withrow was treated for Hodgkin's lymphoma. She was eleven years old. In 1995, Rebekah suffered a recurrence of Hodgkin's lymphoma and was admitted to WVUH in Morgantown, West Virginia, for care and treatment. Rebekah's primary physician was Marie Steiner, M.D., a faculty physician at the West Virginia University School of Medicine and an employee of the University of West Virginia Board of Trustees.

Dr. Steiner performed an allogenic bone marrow transplant on Rebekah in October 1995. On December 2, 1995, while still hospitalized, Rebekah suffered a right periototemporal hemorrhage ("a stroke"). It is alleged that Rebekah's stroke occurred as a result of her blood platelet count falling to 13,000.

The record indicates that Rebekah's platelet count was monitored every twelve hours following her bone marrow transplant because one of the complications associated with the procedure is difficulty in producing platelets which can lead to other serious problems. Dr. Steiner entered a series of orders indicating the level at which Rebekah's platelet count was to be maintained. If Rebekah's platelet count fell below the specified level, the nursing staff was instructed to give Rebekah a transfusion to bring her platelet count back up to the designated level. Dr. Steiner changed Rebekah's required platelet count on one occasion because she was taking a certain medication, heparin. Her level was adjusted on another occasion because she was having her menses.

On December 1, 1995, Rebekah's platelet count fell to 32,000. When her platelet count was checked twelve hours later, at 3:00 a.m. on December 2, 1995, it was 13,000. Upon learning of Rebekah's low platelet count, an order for one unit of platelets was entered by the WVUH nursing staff. However, while the platelets were being prepared, Rebekah suffered a stroke.

On March 7, 1997, the Withrows filed this action in the Circuit Court of Kanawha County against WVUH and the University of West Virginia Board of Trustees. The Withrows alleged, *inter alia*, that Rebekah suffered a stroke because the WVUH nursing staff allowed her platelet count to fall below the level specified by her treating physician. The Withrows claimed that Rebekah was permanently physically and mentally impaired as a result of the stroke.

Following discovery, the defendants filed separate motions for summary judgment. On June 13, 2001, the circuit court issued an

---

1. As discussed herein, the Withrows also filed suit against the University of West Virginia Board of Trustees. The Withrows' claims against the Board of Trustees are still pending below.

order granting summary judgment in favor of WVUH. The summary judgment motion filed by the University of West Virginia Board of Trustees was denied. Thereafter, the Withrows filed a motion requesting the circuit court to amend its findings of fact and the order granting summary judgment to WVUH. The motion was denied in the final order entered on August 6, 2001. This appeal followed.

## II.

### STANDARD OF REVIEW

As noted above, the Withrows appeal an order granting summary judgment to WVUH. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held that: "A circuit court's entry of summary judgment is reviewed *de novo.*" This Court has also held that, "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). In Syllabus Point 2 of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court explained that,

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

With these principles in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

The Withrows contend that a genuine issue of material fact exists in this case regarding the platelet level ordered to be maintained just before Rebekah suffered a stroke. They assert that the evidence is conflicting with respect to which platelet count order given by Dr. Steiner was in effect on December 1, 1995. Thus, the Withrows maintain

that there is a factual dispute, and the circuit court erred in granting summary judgment to WVUH.

The record shows that following Rebekah's bone marrow transplant, Dr. Steiner entered a "protocol order" which required Rebekah to be transfused with platelets if her platelet count reached or fell below 20,000. On November 24, 1995, Dr. Steiner entered a temporary order requiring a transfusion of platelets for Rebekah if her platelet count fell below 30,000. This order was put in place because Rebekah was taking heparin. On November 25, 1995, Dr. Steiner entered another temporary order requiring Rebekah to be given platelets if her platelet count fell below 40,000 because she was having her menses. The circuit court found that the November 25, 1995 order was discontinued on November 30, 1995, and that the original protocol order requiring a transfusion if Rebekah's platelet count reached or fell below 20,000 was in place on December 2, 1995, when Rebekah suffered a stroke.

In the final order granting summary judgment to WVUH, the circuit court concluded that the Withrows failed to offer expert testimony to prove that there had been a breach of the applicable standard of care by the WVUH nursing staff. The circuit court stated:

> The uncontroverted evidence in the record is that on December 2, 1995, the order that was in place respecting Rebekah's platelet count was the protocol order. The protocol order required a transfusion only if Rebekah's platelet count fell below 20,-000. From the standpoint of the nursing staff, Dr. Steiner's orders were clear. It was the protocol order that was in place and it was clear. The plaintiff has not presented any evidence which would show that, on December 2, 1995, the nursing staff knew or had reason to believe that Dr. Steiner intended that Rebekah be transfused when her platelet count was at a higher level.
>
> In light of the evidence that the nursing staff acted in accordance with the protocol order in effect on December 2, 1995, the plaintiffs have failed to prove that the

nursing staff, and its employer, West Virginia University Hospitals, Inc., breached the applicable standard of care.

After reviewing the record, we believe the evidence supports the circuit court's conclusion that the Withrows failed to present evidence establishing that WVUH breached the applicable standard of care.

 This Court has stated that "[w]hen the principles of summary judgment are applied in a medical malpractice case, one of the threshold questions is the existence of expert witnesses opining the alleged negligence." *Neary v. Charleston Area Medical Center, Inc.*, 194 W.Va. 329, 334, 460 S.E.2d 464, 469 (1995). This question must be answered because "[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964).[2] In this regard, W.Va.Code § 55–7B–7 (1986) provides, in pertinent part, "The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court." Consequently, if a plaintiff is unable to produce an expert witness to testify to the applicable standard of care and a breach thereof, he or she cannot establish a *prima facie* case of medical negligence and summary judgment is proper. *See Goundry v. Wetzel–Saffle*, 211 W.Va. 698, ——— n. 10, 568 S.E.2d 5, 8–9 n. 10 (2002) ("[O]nce a trial court makes the discretionary determination that a plaintiff must produce a qualified medical expert in a medical malpractice case, underlying disputed material issues of fact cannot be reached until the plaintiff has produced a qualified medical expert.)."

In this case, the Withrows designated Barry Singer, M.D., as their expert witness. Dr. Singer is board-certified in internal medicine, hematology, and oncology. Although he has no certification in pediatrics or pediatric oncology, he has cared for pediatric patients in his practice. Having reviewed Dr. Singer's deposition which was submitted with the motion for summary judgment, we find that Dr. Singer failed to render an opinion regarding a breach of the applicable standard of care by WVUH.

During his deposition, Dr. Singer testified that the WVUH nurses would have breached the standard of care if Dr. Steiner had ordered that platelets be given to Rebekah and they failed to do so. However, Dr. Singer was unable to say that the nurses had failed to follow Dr. Steiner's orders. Initially, Dr. Singer testified that he believed Dr. Steiner intended that Rebekah receive a transfusion if her platelet count fell below 40,000. However, when presented with Rebekah's medical chart, Dr. Singer admitted that he was unfamiliar with WVUH's computerized ordering system and he did not know which order was in place with respect to Rebekah's platelet count on December 1, 1995. Thus, he was unable to say the WVUH nursing staff failed to follow Dr. Steiner's orders. Furthermore, when Dr. Singer was asked, "What about the hospital itself, its policies, procedures, the way its lab operated, do you have any sort of opinions about a breach of the standard of care at level," he replied, "[n]o, not specifically, no."

2. We noted that this Court has held that:

In medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's *prima facie* showing of negligence. Syllabus Point 4, *Totten v. Adongay*, 175 W.Va. 634, 337 S.E.2d 2 (1985). In addition, we have held that, "[t]he standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony, because the jury is competent from its own experience to determine and apply a reasonable care standard." Syllabus Point 9, *McGraw v. St. Joseph's Hosp.*, 200 W.Va. 114, 488 S.E.2d 389 (1997). In Syllabus Point 8 of *McGraw*, we determined that "[a] trial court is vested with discretion under W.Va.Code § 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." In the instant case, the circuit court determined that expert testimony was necessary.

In sum, the Withrows were unable to establish by expert testimony that WVUH breached the applicable standard of care. Consequently, they lacked evidence to prove an essential element required to establish a *prima facie* case of medical negligence against WVUH. Therefore, WVUH was entitled to summary judgment.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on August 6, 2001, is affirmed.

Affirmed.

Justice STARCHER dissents and files a dissenting opinion.

Justice McGRAW dissents.

STARCHER, Justice, dissenting.

(Filed Dec. 10, 2002)

I dissent from the majority opinion, because I believe inferences can be drawn from the record that are favorable to the plaintiff/appellant. I therefore believe summary judgment was improper.

Rebekah Withrow suffered a stroke when her platelet count fell to 13,000 on December 2, 1995. The day before, her platelet count had been 32,000.

The record indicates that Rebekah's doctor, Dr. Marie Steiner, entered a protocol order that required Rebekah to be transfused with platelets if her platelet count reached or fell below 20,000. On November 25, 1995, Dr. Steiner entered an order requiring Rebekah's platelet count to be kept above 40,000. The circuit court specifically found that this order "temporarily superseded the protocol order."

The record also indicates that the order regarding a platelet count of 40,000 was discontinued on November 30, 1995, so any person reading Rebekah's medical chart would believe that the protocol order specifying a platelet count of 20,000 was in place.

The appellants do not dispute that the defendant/appellee, West Virginia University Hospital, reacted quickly to transfuse Rebekah with platelets when it was discovered that her platelet count was 13,000. Their argument is over *who* discontinued the 40,000 platelet count order on November 30, 1995.

The appellants assert that a nurse working for the appellee hospital entered the discontinue order, without any authorization from Dr. Steiner to do so. Thus, the hospital's alleged failure to abide by Dr. Steiner's order to keep Rebekah's platelet count above 40,000, and the alleged inappropriate and unauthorized discontinuance of Dr. Steiner's order by a nurse form the factual basis of the appellant's negligence claim against the appellee.

Thus, the order allegedly in effect on December 1, 1995, when Rebekah's platelet count was 32,000, still required that Rebekah's platelet count be kept above 40,000. The appellant's expert did opine that Rebekah should have been transfused with platelets on December 1 until her count was again above 40,000, and explained that the transfusion would have prevented the stroke.

Despite this evidentiary dispute, the circuit court and the majority opinion concluded that there were no questions of fact, and no inferences favorable to the appellant that could be drawn from the record. I believe these conclusions were wrong, and believe a jury should have been allowed to decide if the hospital's actions were negligent.

I therefore respectfully dissent.