**Joseph CAIN, Plaintiff Below, Appellant,**

v.

**GREEN TWEED & CO., INC., Defendant Below, Appellee.**

**No. 124, 2003.**

Supreme Court of Delaware.

Submitted: Aug. 19, 2003.

Decided: Sept. 29, 2003.

---

**40.** *See, e.g., In re Benson,* 774 A.2d 258 (Del. 2001); *In re Macpherson–Johnson,* 2001 WL 760866 (Del. June 14, 2001).

David A. Arndte, and Robert Jacobs, of Jacobs & Crumplar, P.A., Wilmington, DE, for Appellant.

David L. Baumberger, of Chrissinger & Baumberger, Wilmington, DE, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice:

Joseph Cain, the plaintiff-below ("Cain"), appeals from a bench ruling of the Superior Court granting summary judgment in favor of defendant Green Tweed & Company ("Green Tweed"), which is one of several asbestos company defendants in this case. In this action, Cain claims that he was harmed by exposure to asbestos in products manufactured by those defendants, including Green Tweed.

We must decide two issues on this appeal. The first is whether the Superior Court erred in ruling that an affidavit that Cain filed in opposition to Green Tweed's summary judgment motion after his first deposition was taken, was a sham and would not be considered. The second issue is whether the Superior Court erred in concluding that the record did not establish, *prima facie*, a "product nexus" *i.e.*, "substantial support" for an inference that Cain had been exposed to an asbestos-containing product. We conclude that the Superior Court's rulings on both issues were erroneous. We therefore reverse.

## I. FACTS

The factual background is, from a procedural standpoint, somewhat convoluted. Cain's deposition was noticed for July 16, 2002. Notice of that deposition was given through the CLAD system, which is a dedicated form of electronic filing in certain complex Superior Court cases. As a consequence of that procedure, Green Tweed received general, although not individual, notice of the deposition. Because

he was unavailable on that date, Green Tweed's counsel did not attend the deposition even though he had received lawful notice and apparently did not object to the deposition going forward.

During his deposition, Cain was questioned about the products to which he was exposed. Cain responded (without elaboration) "Palmetto."[1] That product, Palmetto, was one that Green Tweed manufactured, both as an asbestos-containing product (until 1982) and also (at all relevant times) as a non-asbestos-containing product.

After Cain's deposition, Green Tweed moved for summary judgment on the ground that Cain had failed to establish a "product nexus" between his injury and the asbestos-containing form of Palmetto. In response to Green Tweed's Opening Brief, Cain filed, together with his Answering Brief, an affidavit that set forth more specific information about Cain's use of Green Tweed's Palmetto product. There is no claim that Cain's affidavit contradicted any of his July 16, 2002 deposition testimony. The affidavit simply added new information that was not a subject of Cain's prior deposition testimony, because interrogating counsel had not asked any questions about it. The Cain affidavit succinctly stated:

> I have been employed by DuPont at the DuPont Experimental Station since 1961. In my deposition of July 16, 2002,

I discussed my exposure to asbestos-containing products at the Experimental Station. On page 139 I recalled using Palmetto packing at the Experimental Station.

> My use of Palmetto asbestos-containing packing product began in 1961 when I first became employed at the Experimental Station. I used this product on a monthly basis. Palmetto placing was a braided, rope like material.

> It was packaged in a box. I pulled the desired length of packing from the box and cut the packing to size. The Palmetto packing product created dust when I pulled, cut and installed it.

On October 30, 2002, Cain was deposed a second time. The reason is that in the interim, the Federal Bankruptcy Court had remanded to the Superior Court claims pending against certain other defendants who had not participated in the first Cain deposition. Green Tweed's counsel attended Cain's second deposition and examined Cain on Green Tweed's asbestos-containing Palmetto products. The substance of Cain's testimony at his second deposition essentially mirrored what Cain said in the affidavit he filed after his first deposition, in opposition to Green Tweed's motion for summary judgment.

Although Cain was represented by another member of the firm, Cain's regular counsel was not present at that second deposition, and was unaware that during that deposition the subject of Palmetto

---

1. The pertinent portion of Cain's deposition testimony is found on page 139, where Cain stated:

    Q: Then when you were done cleaning the gaskets, you would put the same gasket back on the edge of the flange and reconnect the flanges?
    A: Right.
    Q: When you cut your own gaskets, did that cause any dust?
    A: A little bit. You get it on your hands, you know.

    Q: Just brush it off and go forward?
    A: Yes.
    Q: Let's talk about the packing a little bit. Do you recall the manufacturer or manufacturers of the packing that you used at the Experimental Station?
    A: I think Garlock was a packing. I wouldn't swear to it. Palmetto. I still use that. The only ones I can think of.

asbestos-containing products was revisited. Green Tweed's counsel, who was present, apparently forgot (at the oral argument) that he had questioned Cain about those products.

Oral argument on the summary judgment motion took place on November 21, 2002. At that time, at Green Tweed's urging, the Superior Court determined that Cain's affidavit was a sham and would not be considered. Thereafter, during the oral argument, there were no references to Cain's second deposition, for which reason the trial court was unaware that a second deposition had been taken and of that deposition's contents. The Superior Court decided the summary judgment motion solely on the basis of Cain's testimony in his first (July 16, 2002) deposition. That testimony, the Superior Court held, was insufficient to withstand Green Tweed's motion for summary judgment.

Later, Cain's counsel reviewed the entire file. During the course of his review, counsel discovered certain critical testimony in Cain's second deposition, which prompted counsel to file a Rule 60(b) motion for relief from the summary judgment order. The grounds for the motion were newly revealed evidence and mutual mistake caused by both parties' excusable neglect. The Superior Court concluded, in a bench ruling, that a mutual mistake had occurred, and that the mistake supported granting the Rule 60(b) motion. Nonetheless, after reconsidering the issue, the Court determined to adhere to its original ruling on the ground that the second deposition and the affidavit testimony remained factually and legally insufficient to establish the requisite "nexus" with Green

Tweed's asbestos-containing Palmetto product.

## II. ANALYSIS

### A. The "Sham Affidavit" Issue

■ The first issue, as noted, is whether Cain's affidavit was properly stricken as a sham. We conclude that that affidavit should not have been stricken.

■ The "sham affidavit" doctrine appears to be a matter of first impression in this Court. That doctrine refers to the practice of striking or disregarding an affidavit that is submitted in opposition to a motion for summary judgment, in cases where the affidavit contradicts the affiant's prior sworn deposition testimony.[2] The core of the doctrine is that where a witness at a deposition has previously responded to unambiguous questions with clear answers that negate the existence of a genuine issue of material fact, that witness can not thereafter create a fact issue by submitting an affidavit which contradicts the earlier deposition testimony, without an adequate explanation.[3] An affidavit of that kind, in those circumstances, is deemed to create sham issues, and will not be considered by the trial court as evidence on a motion for summary judgment.

The sham affidavit doctrine, the origins of which are traceable to the Second Circuit decision in *Perma Research & Development Co. v. Singer Co.*,[4] has been adopted in some form by all Federal Circuit courts and by the courts of most

2. *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir.1984).

3. *Id.*

4. 410 F.2d 572 (2d Cir.1969). ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") *Id.* at 578.

states.[5] In Delaware, the doctrine was first adopted by the Superior Court in *Nutt v. A.C. & S. Co., Inc.*[6] This Court has yet to pronounce on the issue. We need not address the validity or scope of the doctrine, because we find it to be inapplicable in this case.

We start with the fact that in the case *sub judice*, Cain's affidavit did not contradict any testimony contained in his first deposition. All the affidavit did was supplement Cain's testimony with further information that had not been previously elicited, because interrogating defense counsel did not ask the appropriate questions. Thus, the "sham affidavit" doctrine does not apply in this case because Cain's affidavit did not attempt to, nor did it, create a sham factual issue.

Green Tweed's implicit position is that the "sham affidavit" doctrine should be extended to cover this quite different fact setting. But Green Tweed cites no authority, nor makes any reasoned argument, why the doctrine should extend that far. Nor would that result make sense here, because there was no prejudice to Green Tweed. In this case, Cain, the affiant, was re-deposed. During that second deposition, Green Tweed had ample opportunity to examine Cain on any new facts set forth in his affidavit. Accordingly, it was error for the trial court to strike Cain's affidavit as a "sham."

## B. The "Product Nexus" Issue

■ The second, merits-related, issue is whether Cain established a *prima facie*

case of "product nexus;" *i.e.,* a showing that the asbestos product was used in an area where the plaintiff frequented, walked by, or worked adjacent to, with the result that fibers emanating from the use of the product would have been present in the area where the plaintiff worked.[7] On this issue, the basis for the Superior Court's original summary judgment bench ruling is as follows:

> [H]aving stricken the affidavit as being a sham, in my view, the remaining record does not support the plaintiff's contention that he had contact with an asbestos-containing product manufactured by the defendant, Green Tweed; the product being marketed under the name Palmetto. There is some reference to Palmetto products in Mr. Cain's deposition. Those references, however, are fleeting, not specific, and do not identify the Palmetto product as one which contains asbestos.[8]

As previously noted, the record also contained Cain's testimony at his second deposition—testimony that was essentially identical to the affidavit that the Court had erroneously stricken. Giving Cain the benefit of all favorable inferences, a fair summary of his testimony is that: (1) Cain specifically remembered having used Green Tweed products from the sixties through the eighties; (2) Cain knew those products included the Palmetto asbestos product, because the box in which the packing came was labeled "Palmetto;" (3) Cain knew that the packing product labeled "Palmetto" contained asbestos, be-

---

5. *See Shelcusky v. Garjulio,* 172 N.J. 185, 797 A.2d 138 (2002) (collecting cases).

6. 517 A.2d 690, 693 (Del.Super.Ct.1986) ("[W]hen a witness has previously given clear answers to unambiguous questions at deposition which negates the existence of a genuine issue of fact, that person can not create such an issue with an affidavit contradicting his

earlier testimony, absent an adequate explanation.")

7. *See In re Asbestos Litig.,* 509 A.2d 1116 (Del.Super.Ct.1986).

8. Tr. of Hearing on Motion for Summary Judgment (Nov. 21, 2002) at 18.

cause the asbestos-containing product had been specified for the tasks that he was then performing; (4) when Cain used the product, dust was created as a result of his pulling the rope-like material out of the box and cutting it; and (5) that dust contained asbestos to which Cain was exposed.

The evidence elicited in Cain's affidavit and second deposition was sufficient to establish a *prima facie* case of "product nexus." Because the summary judgment record reveals disputed issues of material fact, we conclude that the trial court's grant of summary judgment on the ground that no nexus had been established, was erroneous.

## III. CONCLUSION

For the foregoing reasons, the Superior Court's grant of summary judgment is REVERSED, and the case is REMANDED for proceedings consistent with this Opinion.