599 S.E.2d 826

**Lora D. KISER, Plaintiff Below, Appellant**

v.

**Carrel Mayo CAUDILL, M.D. Defendant Below, Appellee.**

**No. 31614.**

Supreme Court of Appeals of West Virginia.

Submitted April 27, 2004.

Decided June 23, 2004.

Dissenting Opinion of Justice McGraw June 30, 2004.

Concurring Opinion of Justice Starcher July 8, 2004.

Starcher, J., concurred and filed a separate opinion.

McGraw, J., dissented and filed a separate opinion.

John R. Mitchell, Sr., E. Dixon Ericson, John R. Mitchell, L.C., Charleston, for Appellants.

William L. Mundy, Debra A. Nelson, Mundy & Nelson, Huntington, for Appellee.

MAYNARD, Chief Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on December 5, 2002. Pursuant to that order, the circuit court granted summary judgment in favor of the appellee and defendant below, Carrell Mayo Caudill, M.D., in this medical malpractice action filed by the appellant and plaintiff below, Lora D. Kiser. In this appeal, Ms. Kiser contends that the circuit court erred by granting Dr. Caudill's motion to strike the affidavit of James Barnes. M.D., which was submitted in opposition to the motion for summary judgment. Ms. Kiser further contends that the circuit court erred by finding that Dr. Barnes, her sole expert witness, was not qualified to testify as to the applicable standard of care, and accordingly, granting Dr. Caudill's motion for summary judgment.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set

forth below, the circuit court's final order is affirmed.

# I.

## FACTS

This case has a long history and is before this Court for a second time. Ms. Kiser was born with various congenital spinal abnormalities on August 12, 1973. She was referred to Dr. Caudill who performed exploratory surgery on her at the age of three months old. According to Ms. Kiser, following the surgery, Dr. Caudill told her parents that she suffered from a tethered spinal cord, but he did not recommend further surgery or testing. As Ms. Kiser grew older, her condition became worse. She underwent further surgery in Kentucky, but eventually became a paraplegic and, consequently, permanently confined to a wheel chair.

On December 2, 1992, Ms. Kiser filed this medical malpractice action against Dr. Caudill. She alleged, *inter alia*, that Dr. Caudill failed to perform the proper surgical procedure, failed to accurately diagnose her condition during the exploratory surgery, and failed to advise of the proper post-operative treatment. After several years of discovery, the case was scheduled for trial on August 4, 1997.

During the pre-trial hearing on July 28, 1997, the circuit court ruled that James Barnes, M.D., would not be permitted to testify on behalf of Ms. Kiser because he was untimely disclosed as an expert witness. Subsequently, the case was continued, and the trial did not begin until July 26, 1999. Despite the two-year continuance, Dr. Barnes was still not permitted to testify. Shortly after the trial began, the circuit court ruled that Ms. Kiser's other expert witness, Charles Brill, M.D., was not qualified to testify regarding the applicable standard of care. As a result, Ms. Kiser was not able to sustain a *prima facie* case of medical negligence, and the circuit court granted judgment as a matter of law in favor of Dr. Caudill.

On appeal, this Court reversed the circuit court's order granting judgment as a matter of law in favor of Dr. Caudill. *Kiser v. Caudill*, 210 W.Va. 191, 557 S.E.2d 245 (2001) (*"Kiser I"*). We remanded the case for further proceedings after finding that "Dr. Barnes should have been recognized as an expert witness and discovery should have been reopened to allow the appellee to depose Dr. Barnes." *Kiser I*, 210 W.Va. at 198, 557 S.E.2d at 252. In so finding, we explained that the circuit court's initial ruling excluding Dr. Barnes from testifying was proper. However, since the trial was subsequently continued for another two years, we concluded that "the circuit court abused its discretion by refusing to recognize Dr. Barnes as an expert witness in this case and to allow him to testify at trial." *Id.*[1]

On remand, discovery was reopened so that counsel for Dr. Caudill could depose Dr. Barnes. Thereafter, Dr. Caudill filed a motion to exclude the testimony of Dr. Barnes and a motion for summary judgment. Dr. Caudill claimed that Dr. Barnes had testified during his deposition that he did not know what the standard of care was for a neurosurgeon performing the surgical procedure involved in this case, i.e., untethering a spinal cord in 1973. In response, Ms. Kiser submitted an affidavit from Dr. Barnes. Dr. Caudill, in turn, moved to strike the affidavit.

Upon review, the circuit court determined that Dr. Barnes' affidavit contradicted his deposition testimony and was "an attempt to fabricate an issue of fact in order to defeat a motion for summary judgment." Thus, the circuit court granted Dr. Caudill's motion to strike the affidavit. The circuit court also found that Dr. Barnes was not qualified to render expert testimony regarding the applicable standard of care. Accordingly, the circuit court granted Dr. Caudill's motion for summary judgment. This appeal followed.

# II.

## STANDARD OF REVIEW

■ Ms. Kiser challenges the circuit court's ruling finding that her expert witness

---

1. This Court affirmed the circuit court's rulings relating to Dr. Brill. *Kiser I*, 210 W.Va. at 196, 557 S.E.2d at 250.

was not qualified to testify regarding the applicable standard of care. In Syllabus Point 5 of *Jones v. Patterson Contracting, Inc.*, 206 W.Va. 399, 524 S.E.2d 915 (1999), this Court held that, "'Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.' Syl. Pt. 5, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960)."

■■■ Ms. Kiser also asserts that the circuit court erred by granting summary judgment in favor of Dr. Caudill. Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." This Court has also observed that:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). With these standards in mind, we now address the issues in this case.

### III.

### DISCUSSION

#### A. *Exclusion of the Affidavit*

■■■ Ms. Kiser first contends that the circuit court abused its discretion by striking

the affidavit of Dr. Barnes. Ms. Kiser maintains that any disparity between Dr. Barnes' deposition testimony and his affidavit is a result of ambiguity in defense counsel's questions or a misunderstanding on the part of Dr. Barnes regarding what was being asked. Ms. Kiser says that in response to defense counsel's questions, Dr. Barnes said that he did not know how children with tethered spinal cords were being treated at other hospitals other than his own because he was not there to observe such treatment. She maintains that Dr. Barnes merely restated his opinions regarding the proper standard of care as it existed in 1973 in his affidavit.

This Court recently reviewed a circuit court's decision to strike an affidavit of a defendant doctor's medical expert in another medical malpractice case. In *State ex rel. Krivchenia v. Karl*, 215 W.Va. 603, 600 S.E.2d 315, (2004) WL 583872 (No. 31660, Mar. 16, 2004), the circuit court entered an order limiting the testimony of the defendant's expert because the expert indicated in his deposition that he was not going to render an opinion concerning the applicable standard of care. The defendant filed a motion for reconsideration and attached an affidavit from his expert indicating that he would, in fact, render an opinion that the defendant did not deviate from the standard of care. The circuit court denied the motion for reconsideration, and thus, the defendant sought a writ of prohibition from this Court to prohibit enforcement of the order.

We issued the writ in *Krivchenia* stating that "[b]ased upon [the expert's] affidavit ... the circuit court should have granted the motion for reconsideration and permitted [the expert] to render an opinion on the standard of care." 215 W.Va. at 608, 600 S.E.2d at 320. The expert had testified during his deposition that he did not understand the legal definition of the standard of care and therefore, could not render such an opinion.[2] In his affidavit, the expert indicated

---

2. During his testimony, the expert was asked, "As far as what the standard of care is at that moment [July 23, 1998] you don't know, you don't intend to offer an opinion on that?" *Krivchenia*, 215 W.Va. at 606, 600 S.E.2d at 318.

He replied, "Again, I think the standard of care is a term that you guys define, it's not a term that we use—I use when I'm practicing medicine." *Id.*

that he had been advised of the legal definition of the standard of care as it applied to the defendant and would render an opinion that the defendant did not deviate from that standard with regard to his treatment of the plaintiff. Thus, we concluded that the expert was qualified to testify and therefore, should be permitted to give his opinion.

In the case *sub judice,* Dr. Barnes testified that he only knew the standard of care with regard to tethered spinal cords at the hospital where he was working in 1973, which was the Children's Hospital in Columbus, Ohio. When asked whether he knew what the standard of care was at any other hospital, he replied, "No, I don't." He also said, "I don't remember what the standard of care at other places was at that time." However, when Dr. Barnes provided an affidavit for Ms. Kiser in response to the motion for summary judgment, he indicated that the standard of care was the same for neurosurgeons in West Virginia as it was for neurosurgeons in Columbus, Ohio, in 1973, and that he would testify that Dr. Caudill breached the standard of care by not recognizing and untethering Ms. Kiser's spinal cord.

Unlike *Krivchenia,* where the defendant's expert obviously misunderstood what he was being asked, Dr. Barnes did not express any confusion with regard to the questions posed by defense counsel during his deposition. Over the course of two and a half hours, Dr. Barnes was repeatedly questioned about the applicable standard of care. His answers were clear and unambiguous. He simply said that he had no knowledge of the applicable standard of care outside of the hospital where he practiced in 1973. Nonetheless, in his subsequent affidavit, which was submitted only after Dr. Caudill moved for summary judgment, Dr. Barnes completely contradicted his deposition testimony without any explanation. In contrast to his prior testimony, he indicated in his affidavit that the standard of care in 1973 was the same in West Virginia as it was in Ohio, and that Dr. Caudill had breached that standard. In light of the obvious contradictions between Dr. Barnes' deposition testimony and his affidavit, we are unable to find that the circuit court erred by disregarding the affidavit.

We recognize, of course, that Rule 56 of the West Virginia Rules of Civil Procedure provides for the submission of affidavits to both support and oppose motions for summary judgment.[3] Nevertheless, we believe that a court must be free to disregard a conflicting affidavit. As the Second Circuit Court of Appeals explained in *Perma Research and Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2nd Cir.1969):

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*See also Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1365 (8th Cir.1983) ("If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment."). Moreover, this Court has previously held that "[a]n expert witness' affidavit that is wholly conclusory and devoid of reasoning does not comply with West Virginia Rule of Civil Procedure 56(e)." Syllabus Point 6, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995). At the same time, we realize that:

**3.** Rule 56(e) of the West Virginia Rules of Civil Procedure provides:

> *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

[T]here are situations in which sworn testimony can quite properly be corrected by a subsequent affidavit. Where the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact.

*Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 705 (3rd Cir.1988). Such was the case in *Krivchenia*.

In order to address the issue of a conflicting affidavit, most federal courts have adopted what is known as the "sham affidavit" rule. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994); *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir.1969); *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 705 (3rd Cir.1988); *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir.1990); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir.1996); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986); *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir.1985); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir.1983); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir.1975); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986); *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir.1984); *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 498 (Fed.Cir.1992). Basically, the "sham affidavit" rule precludes a party from creating an issue of fact to prevent summary judgment by submitting an affidavit that directly contradicts previous deposition testimony of the affiant.

For example, in *Colantuoni*, the plaintiff, a sheet metal worker, filed suit against, *inter alios*, a general contractor and a ladder manufacturer after he fell from the upper section of an extension ladder. During his deposition, the plaintiff testified that he realized the risks inherent in using only the upper portion of an extension ladder. He said he knew that since the ladder did not have rubber feet, there was a greater chance that it might slip. However, after the defendants moved for summary judgment asserting that the doctrine of assumption of the risk barred recovery for the plaintiff's negligence and products liability claims, the plaintiff submitted an affidavit claiming that he had no knowledge of the ladder's propensity to slip. The United States Court of Appeals for the First Circuit upheld the district court's decision to disregard the affidavit. The Court explained that, "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." 44 F.3d at 4–5 (citations omitted).

Similarly, in *Rohrbough*, the United States Court of Appeals for the Fourth Circuit declared that " '[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.' " 916 F.2d at 975 (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984)). In that case, the parents of a child who developed a seizure disorder after she was administered a vaccine brought suit against the drug manufacturer. The plaintiffs' expert was directly questioned regarding whether or not there was a causal link between the vaccine and the child's symptoms. The doctor refused to opine that there was such a link. However, when confronted with the defendant's motion for summary judgment, the doctor submitted an affidavit stating that the vaccine caused the injuries in question. Applying its reasoning from *Barwick*, the Fourth Circuit upheld the district court's decision to disregard the affidavit.

■ As indicated above, the "sham affidavit" rule is not absolute. There are some exceptions. For instance, "a subsequent affidavit may be allowed to clarify ambiguous or confusing deposition testimony." *Adelman–Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 520 (7th Cir.1988). In addition, "[a] contradictory supplemental affidavit is also permissible if it is based on newly discovered evidence." *Id. See also Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir.1995) ("To determine whether a contrary affidavit seeks to create a sham fact issue, we determine

whether: (1) 'the affiant was cross-examined during his earlier testimony;' (2) 'the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence;' and (3) 'the earlier testimony reflects confusion which the affidavit attempts to explain.'" (citation omitted)).

Consistent with the above, this Court noted in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60 n. 12, 459 S.E.2d 329, 337 n. 12 (1995), that:

> A conflict in the evidence does not create a "genuine issue of fact" if it unilaterally is induced. For example, when a party has given clear answers to unambiguous questions during a deposition or in answers to interrogatories, he does not create a trial-worthy issue and defeat a motion for summary judgment by filing an affidavit that clearly is contradictory, where the party does not give a satisfactory explanation of why the testimony has changed. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726 at 30–31 (2d ed. Supp. 1994).

This Court also observed in *Williams* that:

> "Rule 56 of the West Virginia Rules of Civil Procedure plays an important role in litigation in this State. It is 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,'" if there essentially "is no real dispute as to salient facts" or if it only involves a question of law. *Painter* [*v. Peavy*], 192 W.Va. [189,] 192 n. 5, 451 S.E.2d [755,] 758 n. 5, *quoting Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Indeed, it is

one of the few safeguards in existence that prevent frivolous lawsuits from being tried which have survived a motion to dismiss. Its principal purpose is to isolate and dispose of meritless litigation.

194 W.Va. at 58, 459 S.E.2d at 335. We believe that the "sham affidavit" rule furthers the purposes of summary judgment because it helps circuit court judges determine whether there is in fact a genuine issue for trial. We therefore, adopt the rule.[4]

■■ Accordingly, utilizing a concise formulation of the rule announced by the Supreme Court of Wisconsin in *Yahnke v. Carson*, 236 Wis.2d 257, 270, 613 N.W.2d 102, 109 (2000),[5] we now hold that to defeat summary judgment,

> an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained. To determine whether the witness's explanation for the contradictory affidavit is adequate, the circuit court should examine: (1) Whether the deposition afforded the opportunity for direct and cross-examination of the witness; (2) whether the witness had access to pertinent evidence or information prior to or at the time of his or her deposition, or whether the affidavit was based upon newly discovered evidence not known or available at the time of the deposition; and (3) whether the earlier deposition testimony reflects confusion, lack of recollection or other legitimate lack of clarity that the affidavit justifiably attempts to explain.

As discussed above, in this case, the affidavit of Dr. Barnes clearly contradicted his

---

**4.** Traditionally, this Court has utilized decisions of federal courts when interpreting and applying our Rules of Civil Procedure. *See Love v. Georgia Pacific Corp.*, 214 W.Va. 484, 488 n. 2, 590 S.E.2d 677, 681 n. 2 (2003) (Davis, J., dissenting) ("Due to the similarities between our Rules of Civil Procedure and the Federal Rules, we often look to decisions of the Federal Courts interpreting their rules as persuasive authority on how to apply our own rules."); *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 33 n. 11, 464 S.E.2d 181, 187 n. 11 (1995) ("[W]e follow our usual practice of giving substantial weight to federal cases in determining the meaning and scope of our rules of civil procedure.").

**5.** We note that most state courts have also adopted the "sham affidavit" rule. *See generally Shelcusky v. Garjulio*, 172 N.J. 185, 195, 797 A.2d 138, 145 (2002) (discussing majority rule and citing cases from jurisdictions adopting the same); *Cain v. Green Tweed & Co., Inc.*, 832 A.2d 737, 740–41 (Del.2003) (citing *Shelcusky* and cases referenced therein). *But see Pittman v. Atlantic Realty Co.*, 359 Md. 513, 539, 754 A.2d 1030, 1044 (2000) (declining to follow the rule and explaining that it is inconsistent with present Maryland law).

deposition testimony. Contrary to Ms. Kiser's contentions, Dr. Barnes did not express any confusion during his deposition regarding the questions he was asked, nor did he merely restate his opinions in his affidavit. Therefore, based on all the above, the circuit court did not err by disregarding Dr. Barnes' affidavit.

### B. Exclusion of Expert's Testimony

■ Having determined that the circuit court did not err by disregarding Dr. Barnes' affidavit, we now consider whether the circuit court erred by finding that he was not qualified to testify as an expert witness in this case. Ms. Kiser contends that Dr. Barnes was uniquely qualified to testify based on his education, training, and experience. In that regard, she notes that he is a 1955 medical school graduate of Ohio State University. He was board certified in neurological surgery in 1964 and practiced pediatric surgery during the first fifteen years of his practice. He personally performed two to five surgical procedures to untether spinal cords, including cords fixed to a lipoma as in Ms. Kiser's case.

The circuit court determined that Dr. Barnes was not qualified to testify because his deposition showed that he has no more than a casual familiarity with the standard of care. The circuit court further noted that Dr. Barnes testified that he was not an expert on tethered spinal cords and that he never wrote on the subject, nor performed any scientific studies. Finally the court observed that Dr. Barnes could not cite any medical textbooks or literature to support his opinions regarding tethered spinal cord diagnosis and treatment in 1973.

We agree with the circuit court's reasoning. As this Court explained in *Kiser I*, " '[T]o qualify a witness as an expert on [the] standard of care, the party offering the witness must establish that the witness has more than a casual familiarity with the standard of care and treatment commonly practiced by physicians engaged in the defendant's specialty.' " 210 W.Va. at 195–96, 557 S.E.2d at 249–50 (citation omitted). As discussed above, Dr. Barnes indicated during his deposition that he was not familiar with the standard of care regarding tethered spinal cords at hospitals other than the Chil-

dren's Hospital in Columbus, Ohio, where he worked. Thus, Dr. Barnes was not qualified to testify as an expert regarding the applicable standard of care in this case.

### IV.

### CONCLUSION

■ Having determined that Dr. Barnes was not qualified to testify on behalf of Ms. Kiser, we further find that the circuit court properly granted summary judgment in favor of Dr. Caudill. "[When] a plaintiff is unable to produce an expert witness to testify to the applicable standard of care and a breach thereof, he or she cannot establish a *prima facie* case of medical negligence and summary judgment is proper." *Withrow v. West Virginia University Hospitals, Inc.*, 213 W.Va. 48, 52, 576 S.E.2d 527, 531 (2002). Dr. Barnes was Ms. Kiser's only expert witness. Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on December 5, 2002, is affirmed.

Affirmed.

Justice STARCHER concurs and files a concurring opinion.

Justice McGRAW dissents and files a dissenting opinion.

STARCHER, J., concurring:

(Filed July 8, 2004)

I concur with the rule adopted in the majority opinion. In most instances, a witness should not be permitted to say one thing at a deposition, then contradict that testimony at the summary judgment stage with an affidavit. This is particularly the case with a fact witness: a fact witness will rarely have a night-and-day shift in testimony, particularly when the parties have had a chance to extensively depose the witness. If a fact witness offers an affidavit with a statement that is diametrically opposed to something the witness said in a lengthy, exhaustive deposition, then that witness had better list some pretty good reasons in the affidavit why their opinion shifted so dramatically before the circuit court will be obliged to consider it.

A different rule applies with expert witnesses. An expert witness's understanding of a case, and testimony on a legal opinion,

can change with time. An expert witness, who is unfamiliar with a particular issue in a deposition, can become familiar with the issue after a deposition by doing additional research or testing. An expert brings experience to the courtroom, and uses that experience to assist the jury in understanding the facts.[1] If the expert's experience changes, resulting in a change in the expert's opinion or other deposition testimony, then the party offering the expert is entitled to amend the expert's testimony through use of an affidavit. But that affidavit had also better list some pretty good reasons for the change in the expert's testimony.

In the instant case, Dr. Barnes testified that he did not know the standard of care for doctors outside of Columbus, Ohio in 1973; later, one day before the circuit court's hearing on the defendant's summary judgment motion, the plaintiff's attorneys submitted an affidavit from Dr. Barnes indicating he did know the standard of care for doctors in Charleston, West Virginia in 1973. What was missing from Dr. Barnes' affidavit was an explanation of *why* his testimony so dramatically changed. Had Dr. Barnes' affidavit explained the medical literature, textbooks, medical practices and procedures, or techniques that he reviewed after his deposition and that were available to neurosurgeons like the defendant in 1973 in Charleston, West Virginia, and how and why the medical literature, textbooks, medical practices and procedures, or techniques of the time changed and/or supported his opinions, then Dr. Barnes' affidavit would have been acceptable by the circuit court. With the proper supporting information, Dr. Barnes' affidavit would have demonstrated a genuine issue of material fact, and summary judgment could have been denied by the circuit court.

But Dr. Barnes' affidavit did not contain this information, and it was acceptable for the circuit court to choose not to give it any weight.

The lesson to learn from the plaintiff's counsels' mistake in this case, therefore, is that if a witness's deposition testimony is in error, or needs modification, and counsel wishes to correct or alter that testimony by use of an affidavit, counsel cannot create a genuine issue of material fact by simply sticking a conclusory statement in the affidavit that contradicts the deposition testimony. Counsel must make certain that the witness's affidavit fully accounts for the change in testimony.

I therefore concur in the majority's decision.

McGRAW, Justice, dissenting:

(Filed June 30, 2004)

I dissent to the majority opinion because it deprives the plaintiff of her day in court. This case has been working its way through the system for a dozen years but has yet to reach a jury. Our law strongly favors a decision on the merits by a jury of one's peers: "[T]he juror is an integral part of our democratic ideal, representing the conscience of the community." *Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 513, 345 S.E.2d 791, 813 (1986) (McGraw, J., dissenting).

Because the majority decision denies the plaintiff any opportunity to present this case to a jury, I must respectfully dissent.

---

1. An expert often sits in the courtroom during the trial and listens to testimony, learning additional information that may result in an adjustment of his opinion.