# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 11-1641** (Kanawha County 11-F-41)

**Larry Allen Hayes Jr.,**
**Defendant Below, Petitioner**

**FILED**

May 17, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Larry Allen Hayes Jr., by counsel Jason D. Parmer, appeals his jury conviction of the death of a child by a parent, guardian, or custodian by abuse in violation of West Virginia Code § 61-8D-2A. The Circuit Court of Kanawha County entered petitioner's judgment order on October 28, 2011. The State, by counsel, the Office of the Attorney General, filed a response to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted during the January of 2011 term of court on one count of the death of a child by a parent, guardian, or custodian by abuse in violation of West Virginia Code § 61-8D-2A. The underlying facts are these: On September 30, 2010, petitioner had sole care of his girlfriend's daughter, eighteen-month-old B.M., while his girlfriend, Ms. B., was at work. As petitioner drove to pick up Ms. B. from work, he called her and said, "Something is wrong with B.M." When petitioner arrived at Ms. B.'s workplace, Ms. B. pulled B.M. out of her car seat. Blood was coming from B.M.'s nose and mouth, and she was not breathing. Ms. B. began CPR. Firemen arrived and took B.M. to the hospital where she was resuscitated and placed on a ventilator. When it was determined that B.M. had no brain activity, her mother removed B.M. from the ventilator. B.M. died shortly thereafter, on October 3, 2010.

Petitioner initially denied knowledge of the source of the injuries that resulted in B.M.'s death. However, after considerable questioning by the police, petitioner claimed that he had fallen down a set of steps while holding B.M.

Four months prior to petitioner's trial, the State disclosed to the defense its expert witness, Allen Mock, M.D., West Virginia's deputy chief medical examiner, together with Dr. Mock's curriculum vitae.

1

Petitioner's trial was held in August of 2011. On August 24, 2011, Dr. Mock testified on direct examination that B.M.'s death was a homicide and the result of blunt force head trauma that likely occurred on September 30, 2010, when B.M. was in petitioner's sole care. Dr. Mock opined that 25% of B.M.'s skull was fractured, there were no signs that the fractures had begun to heal, and skull fractures like B.M.'s were typically seen in high energy motor vehicle accidents. In regard to his credentialing, Dr. Mock testified that he was eligible to become certified in clinical pathology and anatomic pathology by the American Board of Pathology (the "Board").

At the conclusion of Dr. Mock's direct testimony, the court recessed for the day, in part so the defense could confer with its expert, Dr. Thomas Young, a Board-certified pathologist. Dr. Young had listened to Dr. Mock's testimony remotely, by phone, from Kansas City. The trial court had agreed to this arrangement and had also agreed to give the defense a brief recess after the testimony of each of the State's witnesses to allow the defense to consult with Dr. Young.

The defense cross-examined Dr. Mock on August 25, 2011, for about ninety minutes. Defense counsel began the examination by questioning Dr. Mock about his credentialing. Dr. Mock testified that, in an effort to obtain certification from the Board, he had taken and passed the clinical pathology examination, he was scheduled to take the *anatomic pathology* examination in October of 2011, and he would eventually take a forensic pathology examination. *Dr. Mock specifically testified that he had not previously taken the anatomic pathology examination.* Thereafter, the defense excused Dr. Mock and did not reserve the right to recall him.

Following Dr. Mock's cross-examination, defense counsel again consulted with Dr. Young. Dr. Young told defense counsel that he believed Dr. Mock had lied under oath when he said he had not yet taken the anatomic pathology examination. Dr. Young based this opinion on his belief that clinical pathology *and* anatomic pathology were tested together, as one examination. Therefore, they could not be taken separately as Dr. Mock had testified. Based on this premise, Dr. Young assumed that Dr. Mock had already taken the clinical pathology and anatomic pathology examination; had failed the anatomic pathology portion; and, therefore, was required to take the anatomic pathology portion again.

In response, the defense subpoenaed Dr. Mock for its case-in-chief for the purpose of impeaching Dr. Mock's statement that he had not yet taken the anatomic pathology examination. The subpoena was delivered to Dr. Mock at about 10:30 a.m., on August 26, 2011. The subpoena commanded Dr. Mock to appear at 1:30 a.m.[1] that same day. When Dr. Mock failed to appear at 1:30 p.m., defense counsel moved the trial court to enforce the subpoena. The State objected on the ground that defense counsel had already had ample opportunity to cross-examine Dr. Mock regarding his credentialing. The defense countered that it had learned of Dr. Mock's alleged lie only after it had spoken to Dr. Young following Dr. Mock's cross-examination. The trial court denied the defense's motion to enforce the subpoena. The defense timely objected.

---

[1] Some discussion was had regarding the erroneous 1:30 a.m. time notation but that error is not a deciding issue in this appeal.

2

During the defense's case-in-chief, Dr. Young testified that B.M. had died as a result of blunt force head trauma. However, Dr. Young opined that B.M.'s head trauma might have been accidental and could have occurred when B.M. fell backward off a single step six days before her death.[2] Dr. Young based his opinion on his finding of microscopic evidence of healing of B.M.'s skull fractures. The defense then attempted to introduce Dr. Young's opinion that Dr. Mock had lied on the stand about the anatomic pathology portion of the certification test. However, the trial court, over the defense's objection, precluded Dr. Young's opinion testimony on that issue.

The jury found petitioner guilty as charged. The trial court imposed a determinate sentence of forty years in prison to be followed by a ten-year term of supervised release.

On appeal, petitioner first argues that the trial court denied him the right to compulsory process when it refused to enforce petitioner's subpoena of Dr. Mock. Petitioner cites to Rule 17(b) of the West Virginia Rules of Criminal Procedure which provides, in part, that "[t]he court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that . . . the presence of the witness is necessary to an adequate defense…." Petitioner also cites to Syllabus Point 3 of *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), which provides that due process requires a trial court to enforce a defendant's subpoena "that the witness' testimony would have been both material and favorable to the defense." Petitioner argues that evidence showing that Dr. Mock may have lied about failing the anatomic pathology examination was both material and favorable to the defense, particularly given that Dr. Mock performed B.M.'s autopsy, testified at length about his findings, and offered opinion testimony regarding the manner and cause of B.M.'s death.

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds*, *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 1, *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999).

The trial court neither denied petitioner's right to compulsory process nor abused its discretion when it refused to enforce petitioner's subpoena of Dr. Mock. First, the defense had ample opportunity to investigate Dr. Mock's credentials prior to trial given that the State disclosed Dr. Mock and his curriculum vitae to the defense four months before trial. Second, Dr. Mock's direct testimony regarding his credentialing put the defense on notice of a need to inquire on cross-examination. Third, following Dr. Mock's direct testimony, the trial court granted the defense's motion to postpone its cross-examination of Dr. Mock until the following day, thereby allowing the defense to review Dr. Mock's testimony with Dr. Young at length. The next day, the defense had its opportunity to confront Dr. Mock when it questioned him for an hour and a half on cross-examination on various issues including his credentialing process.

---

[2] As B.M. appeared to be limping following this minor accident, her mother took B.M. to a doctor immediately thereafter and to a follow-up appointment with a second doctor the next day. Neither doctor mentioned signs of head trauma.

Fourth, when Dr. Mock's cross-examination ended, the defense did not reserve a right to recall him on cross-examination. Finally, the defense sought to subpoena Dr. Mock for its case-in-chief to ask him a question he had already answered when he testified that he had not yet taken the anatomic pathology examination.

Petitioner's reliance on *Whitt*, for the proposition that Dr. Mock's testimony would have been both material and favorable to the defense, is misplaced. In *Whitt*, the trial court refused to allow the defendant to call his co-defendant to the stand in an attempt to prove that the co-defendant was actually the perpetrator of the crime with which petitioner was charged. *Id.* at 691-93, 649 S.E.2d at 264-66. Conversely, here, the defense engaged in extensive cross-examination of Dr. Mock regarding his credentialing.

Petitioner also failed to vouch the record that Dr. Mock actually lied about his credentialing to conceal an academic failure. Petitioner's only proffer was that Dr. Mock "likely failed half of the test" because Dr. Mock was *probably* required to sit for "two portions of one test." Thus, the Court cannot determine whether the trial court's ruling was prejudicial to the defense. As we stated in Syllabus Point 1, of *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980),

> [i]f a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal.

In this case and under these particular facts, the trial court exercised its discretion over the mode of interrogating witnesses and presenting evidence, and properly denied petitioner's request to enforce the subpoena.

Petitioner's second assignment of error is that the trial court violated his due process right to present a complete defense when it refused to allow Dr. Young to give his opinion regarding Dr. Mock's testimony and thereby indirectly impeach that testimony. The defense sought to have Dr. Young testify that the only possible explanation for Dr. Mock's testimony was that he failed the anatomic pathology examination and then lied about it. Petitioner argues that Dr. Young was an expert regarding the Board's certification examinations because he had been a Board-certified pathologist for over twenty years. Alternatively, petitioner argues that even if Dr. Young was not an expert in Board credentialing pursuant to Rule 702 of the Rules of Evidence, the trial court deprived petitioner of his fundamental right to present a defense by refusing to allow Dr. Young to give his opinion about Dr. Mock's testimony.

Petitioner also argues that if there is any "reasonable possibility" that the trial court's ruling contributed to petitioner's conviction, the Court must reverse his conviction pursuant to Syllabus Point 20 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) ("Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction."). Petitioner claims that there was a reasonable possibility that the court's refusal to allow Dr. Young to indirectly impeach Dr. Mock

4

contributed to his conviction. Specifically, petitioner claims that if the jury had learned that Dr. Mock might have lied about the anatomic pathology examination, he might have been acquitted.

> "'Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.' Syl. Pt. 5, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960)." Syllabus Point 5, *Jones v. Patterson Contracting*, *Inc*., 206 W.Va. 399, 524 S.E.2d 915 (1999).

Syl. Pt. 1, *Kiser v. Caudill*, 215 W.Va. 403, 599 S.E.2d 826 (2004).

The trial court did not deny petitioner the right to present a complete defense by prohibiting Dr. Young from *speculating*, in the presence of the jury, whether Dr. Mock *may* have failed the anatomic pathology exam. The trial court could not reasonably have allowed the defense to present evidence that Dr. Mock gave false evidence under oath without a reliable basis for the testimony. Here, petitioner proffered no evidence that Dr. Young was an expert on the Board's examination procedures, other than to state that Dr. Mock was certified by the Board as a pathologist, nor did petitioner present any evidence setting forth the Board's testing procedures.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 17, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5