**FILED**

**February 12, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0948– <u>State ex rel. Tallman v. Tucker</u>

WORKMAN, C. J., concurring, joined by Justice Loughry:

I concur with the majority's issuance of the writ of prohibition in this matter; however, I write separately to ensure that the majority's new syllabus point regarding supplementation of discovery and its application in the instant case is not misunderstood or abused. I wholeheartedly agree that seasonable supplementation of discovery is required by our Rules and fundamental fairness. However, adherence to these requirements does not necessitate that an expert disclosure constitute a veritable "script" from which the expert may not stray in testifying and elucidating his opinions. This is particularly the case with *responsive* criticisms or opinions, as this case poignantly illustrates.

To be clear: West Virginia Rule of Civil Procedure 26(b)(4) does not require an exhaustive recitation of an expert's testimony. It requires simply that a party requested to provide his or her expert's opinions identify the expert, the subject matter on which the expert will testify, "the *substance* of the facts and opinions to which the expert is expected to testify and "a *summary* of the grounds for each opinion." W.V.R.C.P. 26(b)(4)(A)(I) (emphasis added).[1] Nor do our Rules require an expert's testimony to be an immovable

---

[1]By contrast, the Federal Rules of Civil Procedure require far more detailed and exhaustive information. Federal Rule of Civil Procedure 26(a)(2) requires a written report, prepared and signed by the witness, and must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them," among other information.

1

object that cannot adapt to the opponent's case as it is presented. As noted in *Kiser v. Caudill,* 215 W.Va. 403, 411-12, 599 S.E.2d 826, 834-35 (2004) (Starcher, J., concurring):

> An expert witness's understanding of a case, and testimony on a legal opinion, can change with time. An expert witness, who is unfamiliar with a particular issue in a deposition, can become familiar with the issue after a deposition by doing additional research or testing. An expert brings experience to the courtroom, and uses that experience to assist the jury in understanding the facts. If the expert's experience changes, resulting in a change in the expert's opinion or other deposition testimony, then the party offering the expert is entitled to amend the expert's testimony[.]

In fact, this potential contemporaneous evolution of an expert's testimony is expressly contemplated in West Virginia Rule of Evidence 703 which provides that the facts or data upon which an expert bases an opinion or inference "may be those perceived by or made known to the expert *at* or before *the hearing*." (emphasis added).

In the instant case, respondent Powell provided a dilatory and scant expert witness disclosure in the form of her screening certificate of merit. The "disclosure" consists of a page and half, comprised primarily of recitations from the medical records. As set forth in the disclosure, the opinion of respondent Powell's expert, Dr. Leonard

2

Milewski, consists only of the vague conclusion that respondent's decedent died from sepsis occasioned by petitioner's failure to remove the decedent's appendix earlier. Although Dr. Milewski's deposition testimony is not contained in the appendix record, it is evident that upon deposition, Dr. Milewski was called upon to actually support his generalized opinion with facts and well-founded medical conclusions. This is evident because petitioner's supplemental disclosures merely contradict the particulars of Dr. Milewski's opinion by utilizing the medical evidence and do not constitute "new" opinions by any stretch of the imagination. For example, the supplemental disclosure states that petitioner's experts will testify that, contrary to Dr. Milewski's testimony, the pathology report indicated that decedent's appendix had not ruptured, did not say that the appendix was purulent or gangrenous, and that his blood cultures were never positive for bacteria. In essence, the supplemental disclosure merely articulates the defense experts' disagreement with the flawed bases of Dr. Milewski's opinions–disagreement which was manifest in petitioner's initial disclosure which contained the substance of the defense experts' contrary opinions and a summary of the bases.

What our Rules require is adequate notice to an opposing party of the evidence which will be adduced at trial such as to allow that party to prepare and respond. As we explained in *Graham v. Wallace,* 214 W. Va. 178, 173-74, 588 S.E.2d 167, 184-85 (2003),

"one of the purposes of the discovery process under our Rules

3

of Civil Procedure is to eliminate surprise. Trial by ambush is not contemplated by the Rules of Civil Procedure." The discovery process is the manner in which each party in a dispute learns what evidence the opposing party is planning to present at trial. Each party has a duty to disclose its evidence upon proper inquiry. The discovery rules are based on the belief that each party is more likely to get a fair hearing when it knows beforehand what evidence the other party will present at trial. This allows for each party to respond to the other party's evidence, and it provides the jury with the best opportunity to hear and evaluate all of the relevant evidence, thus increasing the chances of a fair verdict.

(quoting *McDougal v. McCammon*, 193 W. Va. 229, 236-37, 455 S.E.2d 788, 795-96 (1995)). The supplementation at issue is more in the nature of rebuttal; it did not constitute a "new" opinion by the defense experts or an amendment to the bases for their opinions that petitioner did not violate the standard of care. Experts are as entitled as any witness to rebut or contradict testimony without having invariably reduced to writing their anticipated rebuttal. Common sense dictates that an unmitigated supplementation requirement could result in an endless "back-and-forth" between competing experts that benefits no party. The Rules do not require this practical impossibility.

Therefore, while I do not fault petitioner's supplementation of his initial disclosures, and in fact believe caution certainly justified supplementation, the fact of the matter is that such supplementation occurred; the majority's opinion should not be read to reach the issue of whether the supplementation was necessarily required in this instance. Of course, had respondent Powell bothered to depose the defense experts at any point, all

4

of the alleged "surprise" information would have presumably been fully explored. While respondent Powell's counsel correctly asserted during oral argument that she is under no obligation to conduct such depositions, it is indisputable that she refuses to do so at her own peril. Parties cannot be permitted to "hide" from evidence by failing to conduct adequate discovery and then have the temerity to suggest that they are being ambushed by the very evidence they refused to discover, all of which was readily available to them.

Expert testimony is a dynamic creature. While our discovery rules are designed to avoid unfair surprise and allow each party to adequately prepare and prosecute or defend their case, the vagaries and expediencies of trial necessarily preclude dogged adherence to written disclosures. As noted above, I write separately to caution practitioners against using the majority's new syllabus points as a sword, rather than a shield. The seasonable supplementation rule is not one of gamesmanship. Application of the rule must be driven by fairness, with an over-arching concern with ensuring that the parties must each be permitted to place their full case before the jury and not be hamstrung by an unyielding requirement of absolute prescience by attorneys and experts. Experts must be permitted to be responsive to opinions, factual bases, hypotheticals, explanations, and the myriad of other methods which experts utilize to communicate to the jury. In my view, any genuinely "new" and/or prejudicial information should be fairly apparent; splitting hairs over the nuances of the previously disclosed opinions and "new" information does little to further the purpose of our disclosure and supplementation rules. More

importantly, such new information should ordinarily be addressed by providing an opportunity to cure the prejudice rather than exclusion.

    With these cautionary admonitions, I respectfully concur.