A90A2205. PIER 1 IMPORTS v. CHATHAM COUNTY BOARD OF TAX ASSESSORS.
(404 SE2d 637)

McMURRAY, Presiding Judge.

The Board of Equalization of Chatham County assessed 1989 ad valorem taxes against merchandise found at Pier 1 Imports' ("Pier 1") warehouse located in Chatham County, Georgia. Pier 1 appealed to the superior court, contending that the merchandise is exempt from ad valorem taxation because it is "[f]oreign merchandise in transit" pursuant to OCGA § 48-5-5, i.e., "Foreign merchandise in transit shall acquire no situs so as to become subject to ad valorem taxation by political subdivisions of this state in which the port of original entry or the port of export of such merchandise is located."[1]

The case was tried before a jury to determine, in pertinent part,

[1] OCGA § 48-5-2 (2) defines "foreign merchandise in transit," as it pertains to imported goods, as "personal property of any description which has been or will be moved by water-borne commerce through any port located in this state and . . . (B) Which was shipped from a point of origin located outside the customs territory of the United States and on which United States customs duties are paid at or through any customs district or port located in this state, although stored or warehoused in the county where the port of entry is located while in transit to a final destination."

whether the goods were moved by waterborne commerce through any port located in Georgia so as to qualify as foreign merchandise in transit. In this regard, the evidence revealed the following:

On January 1, 1989, Pier 1 was holding a large percentage of merchandise at its warehouse in Chatham County, Georgia, for distribution to various southeastern retail stores. Pier 1 received an unspecified portion of this merchandise from domestic suppliers. The remaining merchandise was received from foreign suppliers and cleared through the United States Customs Service in Savannah, Georgia. An unspecified portion of the imported merchandise was brought into the United States through the port of Charleston, South Carolina, and transported, via land freight carrier (truck or rail), to the "container freight station in Chatham County, Savannah."[2] The remaining foreign merchandise was brought into the United States through the port of Savannah.

At the close of the evidence, the jury was instructed to enter their verdict on a *"SPECIAL VERDICT FORM"* and, in compliance with this direction, the jury valued the merchandise at Pier 1's warehouse on January 1, 1989, at $5,000,000 and gave an affirmative response to the question, "Was the merchandise in question moved by waterborne commerce through any port located in this State?" However, the trial court entered a judgment notwithstanding the verdict, finding that the jury's answer to the preceding question should have been " 'no' instead of 'yes' " because "the great weight of the evidence . . . clearly showed that most of the merchandise in question was moved by waterborne commerce through the Port of Charleston and then was transported over land by truck to Savannah where customs duties were paid on it through the port of Savannah and [that] some of the merchandise was domestic and not foreign. . . ." The trial court then determined the assessed value of the merchandise based on the jury's finding of the property's fair market value. Pier 1 appeals. *Held*:

1. In its first enumeration, Pier 1 contends the trial court erred in finding that the merchandise transported from the port of Charleston was not "foreign merchandise in transit."

OCGA § 48-5-2 (2) defines "foreign merchandise in transit," as it pertains to imported goods, as "personal property of any description which has been or will be moved by waterborne commerce through any port located in this state and . . . (B) Which was shipped from a point of origin located outside the customs territory of the United

---

[2] Pier 1's Director of International Transportation testified that Pier 1 has no control over how imported merchandise is delivered to the port of entry and that overland shipment of goods from the port of discharge to the port of entry is a mode of transport referred "to in today's real world of international trade or commerce as a mini-land bridge or through bill of lading. . . ."

States and on which United States customs duties are paid at or through any customs district or port located in this state, although stored or warehoused in the county where the port of entry is located while in transit to a final destination."

Pier 1 argues that this Code subsection must be liberally construed so as to effectuate the legislative intent of OCGA § 48-5-5, i.e., to encourage "importers like Pier 1 to locate in Georgia. . . ." Pier 1 further argues that strict compliance with the statutory definition of "foreign merchandise in transit" would "effectively punish the importer for something over which he has no control," referring to the evidence which shows that Pier 1 has no control over how imported merchandise is delivered to the port of entry. These arguments are without merit.

" '[W]here a . . . statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. (Cits.)' *Rayle Electric Membership Corp. v. Cook*, 195 Ga. 734, 735 (25 SE2d 574) (1943). 'In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.' Caminetti v. United States, 242 U. S. 470, 490 (37 SC 192, 61 LE 442) (1917); *Samuelson v. Susen*, 576 F2d 546, 552 (3d Cir. 1978)." *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430).

In the case sub judice, the merchandise received by Pier 1 and delivered to the "container freight station . . ." in Savannah, Georgia, via overland transport from the port of Charleston, South Carolina, did not fit into the plain and natural meaning of "foreign merchandise in transit" as defined by OCGA § 48-5-2 (2). It was not "personal property . . . which has been or will be moved by waterborne commerce through any port located in this state. . . ." Consequently, the trial court properly found the jury to be incorrect in characterizing the imported merchandise brought into the United States through the port of Charleston as "foreign merchandise in transit."

2. In the argument supporting its first enumeration, Pier 1 contends the taxation of its merchandise by Chatham County violates the commerce clause of the federal constitution. However, this contention is not enumerated as error. "[A]n enumeration of error may not be enlarged by brief on appeal to cover issues not enumerated. *Nobles v. State*, 191 Ga. App. 594, 599 (6) (382 SE2d 637) (1989)." *Martinez-Rodriguez v. State*, 195 Ga. App. 491, 492 (2) (393 SE2d 748).

3. Pier 1 contends in its second enumeration that the trial court erred in entering judgment notwithstanding the verdict and argues "the great weight of the evidence showed that the majority of the merchandise in question was originally entered into the United States

through the port of Savannah, Chatham County, Georgia."

A judgment notwithstanding the verdict is authorized only when the evidence and all reasonable deductions therefrom demand a particular verdict. OCGA § 9-11-50 (b); *Wenzcel Tile Co. &c. v. Newman*, 194 Ga. App. 776 (1) (391 SE2d 652); *Mercer v. Woodard*, 166 Ga. App. 119, 127 (13) (303 SE2d 475). In the case sub judice, it is true that the evidence was insufficient to authorize the jury's verdict that all the merchandise at Pier 1's warehouse on January 1, 1989, was "moved by waterborne commerce through any port located in this state. . .," but neither did the evidence *demand* a finding that none of the merchandise was "moved by waterborne commerce through any port located in this state. . . ." On the contrary, the evidence showed that an unspecified portion of the imported goods stored at Pier 1's warehouse on January 1, 1989, was brought into the United States through the port of Savannah. It therefore follows that genuine issues of material fact remain as to what portion of the merchandise found in Pier 1's warehouse on January 1, 1989, was "moved by waterborne commerce through any port located in this state . . ." and whether the goods so imported, if any, were exempt from ad valorem taxation as "foreign merchandise in transit." See *Seabrook Corp. v. Chatham County Bd. of Equalization*, 195 Ga. App. 730 (394 SE2d 796). However, it appears that Pier 1 has abandoned these issues by stating during oral argument before this Court and in a supplemental brief that "Pier 1 is willing to have [the Georgia Court of Appeals] decide the issues . . . as if all of the merchandise in question was initially discharged at the port of Charleston, South Carolina." Under these circumstances, we find no harm in the trial court's judgment notwithstanding the verdict, effectively holding that none of the merchandise in Pier 1's warehouse on January 1, 1989, was exempt from ad valorem taxation under OCGA § 48-5-5.

*Judgment affirmed. Sognier, C. J., and Carley, J., concur.*

DECIDED MARCH 13, 1991 —
REHEARING DENIED MARCH 26, 1991 —

*Bouhan, Williams & Levy, Walter C. Hartridge, Douglas A. Nystrom*, for appellant.

*Brennan, Harris & Rominger, Richard J. Harris, Julie D. Majer, Edward T. Brennan*, for appellee.