460 S.E.2d 464

**Franklin NEARY and Patricia Neary, Plaintiffs Below, Appellants,**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., Defendant Below, Appellee.**

No. 22576.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 1995.

Decided July 11, 1995.

Harvey D. Peyton, Nitro, for appellants.

Richard D. Jones, Christine H. Fox, Flaherty, Sensabaugh & Bonasso, Charleston, for appellee.

PER CURIAM:

Franklin and Patricia Neary appeal a summary judgment order of the Circuit Court of Kanawha County dismissing their complaint without prejudice against the Charleston Area Medical Center, Inc. (CAMC). On appeal, Mr. and Mrs. Neary argue that summary judgment should not have been granted because: (1) there was a material issue of fact concerning whether CAMC's treatment of Mr. Neary was negligent; (2) the doctrine of *res ipsa loquitur*, which applies to this case, precludes summary judgment; and (3) CAMC failed in its duty to warn Mr. Neary of the risks of the surgery. Because Mr. Neary did not present any expert opinion concerning CAMC's alleged negligence or duty to warn and the doctrine of *res ipsa loquitur* does not apply in this case, we affirm the circuit court's order.

On February 12, 1991, Mr. Neary underwent a surgical micro lumbar laminectomy at CAMC. After several weeks of an apparently normal post operative recovery, on May 10, 1991, Mr. Neary developed severe pain, apparently caused by a staphylococcus aureus bacterial infection within the spinal disc space, which was the site of his February 1991 operation. After some initial treatment for the infection at CAMC, Mr. Neary was treated by Donlin Long, M.D. at the Johns Hopkins Medical Center. Mr. Neary maintains that because of the infection he has constant pain and is disabled from all gainful activity.

Mr. Neary claims that CAMC caused his infection because of a break in the sterile surgical technique which allowed the infection to enter the disc space. Mr. Neary also claims that CAMC failed to warn him of the risks of operative infections and his increased susceptibility to infection because he is an insulin dependant diabetic.

On August 27, 1992, Mr. Neary filed a complaint against CAMC, alleging CAMC was negligence in his treatment and failed to warn him of the increased risks. As part of discovery, the deposition of Dr. Long, one of Mr. Neary's post-infection treating physicians, was taken on March 21, 1993. Dr. Long provided the only expert testimony in the record. CAMC moved for summary judgment alleging that Dr. Long had no opinion concerning CAMC's alleged negligence and no opinion concerning CAMC's alleged failure to warn. Mr. Neary maintains that the doctrine of *res ipsa loquitur,* which he claims applies to this case, precludes summary judgment and submitted an affidavit stating that CAMC had not warned him of his increased risk of surgical infection.

After the circuit court granted CAMC summary judgment, Mr. and Mrs. Neary appealed to this Court.[1]

I

▪ This case is a medical professional liability action within the meaning of *W.Va.*

*Code* 55–7B–1 [1986] *et seq.,* the Medical Professional Liability Act.

"It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Syl. Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964). Syl. pt. 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991). Expert testimony is not required if the matter is within the "common knowledge" of the jurors (*see* Syl. pt. 4, *Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985)) or the doctrine of *res ipsa loquitur* (*see Farley, supra,* 185 W.Va. at 50, 404 S.E.2d at 539). *See infra* p. 467, discussing the application of the doctrine of *res ipsa loquitur* in this case.

*W.Va.Code* 55–7B–7 [1986] requires a plaintiff to establish the "applicable standard of care and a defendant's failure to meet said standard" through "testimony of one or more knowledgeable, competent expert witnesses if required by the court." [2]

▪ In this case, Mr. Neary maintains that "the disc space infection itself resulted from some inappropriate break in sterile surgical technique that allowed staphylococcus aureus bacteria to contaminate the disc space." However, Dr. Long, the Nearys' only expert witness, testified that he had not reviewed Mr. Neary's surgical record to develop an opinion of the cause of Mr. Neary's infection and had no opinion concerning whether anyone was negligent in connection with Mr. Neary's surgery.[3]

1. Mrs. Neary sued for loss of consortium.

2. *W.Va.Code* 55–7B–7 [1986] provides:
   The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substan-

tially similar medical field as the defendant health care provider.

3. The following exchanges occurred during Dr. Long's deposition:
   Q. Is there any indication in any of the records that you have seen that would suggest that there were any nonsterile techniques utilized by Dr. Amores or any of the persons associated with the lumbar laminectomy on February 11, 1991 that would have caused the Staph aureus infection in Mr. Neary?
   A. No. There is no report of any break in technique in the records I have.
   Q. Is there any piece of evidence that has come to you in any fashion outside of the records which you have been provided that would suggest that there was any break in the technique during the course of the laminectomy that was the cause of the infection?
   A. No. I have no information that suggests a break in technique.

Mr. Neary argues that the doctrine of *res ipsa loquitur* applies in this case. However, the doctrine does not apply under the circumstances of this case because Mr. Neary's infection could have occurred without anyone's negligence. Syl. pt. 2, *Farley, supra,* states:

"The doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances." Syl. Pt. 5, *Davidson's, Inc. v. Scott,* 149 W.Va. 470, 140 S.E.2d 807 (1965).

One example of the doctrine of *res ipsa loquitur* given by *Farley* is the presence of a surgical sponge or scalpel because the "only inference that can be drawn is that the foreign object was left in the chest from surgery." *Farley,* 185 W.Va. at 50, 404 S.E.2d at 539.

In this case, Dr. Long, Mr. Neary's expert witness, testified that possible causes for infections similar to Mr. Neary's include: (1) foreign object left during surgery; (2) use of non-sterile instruments; (3) non-sterile hands of surgical personnel; (4) other breaks in sterile procedure; (5) post-operative infections of intravenous sites; and (6) presence of the bacteria on the patient's skin. Dr. Long noted that intra-operative infections in laminectomy patients occur in 1 to 3% of the operations.

Although Dr. Long testified that he assumed that Mr. Neary's infection was obtained during the course of his laminectomy, his assumption, in light of his testimony about the other possible causes for such infections and his lack of opinion concerning possible negligence, is not sufficient to invoke the doctrine of *res ipsa loquitur.* Because CAMC's alleged negligence is not the only inference that can be drawn from the facts, the doctrine of *res ipsa loquitur* does not apply in this case.[4]

## II

Mr. Neary also argues that CAMC failed to warn him of the possibility that an infection could occur as a result of his surgery. Mr. Neary maintains that because he is an insulin dependant diabetic, he, if properly warned of the dangers of infections, would have elected to have his surgery at Johns Hopkins. Mr. Neary argues that na-

Q. Have you undertaken to determine the etiology of the infection that Mr. Neary is suffering?
A. No. I have not. I went through the records and didn't see anything that let me determine one way or another.

\* \* \* \* \* \*

Q. Can intraoperative infections occur without negligence on the part of someone?
A. Sure. It happens all the time.

\* \* \* \* \* \*

Q. Have you been asked to review the records in this case or to review any information relating to Mr. Neary with an eye toward rendering an opinion as to what the cause of his infection may be?
A. No.
Q. Have you been asked to render an opinion with respect to whether Dr. Amores, any of the surgical team or the hospital at which the laminectomy was done were in any way negligent in connection with Mr. Neary's infection?
A. Only questions from Mr. Neary. Mr. Neary has asked me on several occasions what can cause this, what can go wrong, isn't there some kind of problem if I end up this way, but

that's only been in the course of his care and hasn't been a specific legal question.
Q. Okay. And have you given Mr. Neary an answer to his question?
A. No. I really haven't. I have only told him that all you can do is go through the records and look for things that are obvious breaks, but I have told him that most of the time the records don't have anything like that, and so it's very likely you can't find some specific event that you can say yes, this is what did it.
Q. Okay. So if I understand your testimony here today, you don't have an opinion that either Dr. Amores or any of the surgical team or anyone at the hospital at which the laminectomy was performed on February 11, 1991 was in any way negligent in connection with Mr. Neary obtaining that infection; is that correct?
A. That's right. I have not reviewed the records to determine that and I haven't been asked that question.

4. The record also does not establish that CAMC had exclusive control of the surgery, which is another predicate of the doctrine of *res ipsa loquitur.* See Syl. pt. 4, *Davidson's, Inc., supra.*

tional infection rate of 1 to 3% for laminectomy surgery clearly establishes that CAMC had a duty to warn its patients of the dangers of such surgery.

■ In *Cross v. Trapp*, 170 W.Va. 459, 468, 294 S.E.2d 446, 455 (1982), we noted that "a physician has a duty to disclose information to his or her patient in order that the patient may give an informed consent to a particular medical procedure." However, expert testimony is required to show a deviation from the standard of care. *W.Va.Code* 55–7B–3 [1986] outlines the elements of proof necessary to show that the injury "resulted from the failure of a health care provider to follow the accepted standard of care. . . ." *See also W.Va.Code* 55–7B–7 [1986], *supra* note 2, requiring expert testimony to establish the standard of care and a defendant's failure to meet such standard.

> Although expert medical testimony is not required under the patient need standard to establish the scope of a physician's duty to disclose medical information to his or her patient, expert medical testimony would ordinarily be required to establish certain matters including: (1) the risks involved concerning a particular method of treatment, (2) alternative methods of treatment, (3) the risks relating to such alternative methods of treatment and (4) the results likely to occur if the patient remains untreated.

Syl. pt. 5, *Cross, supra.*

In this case, no evidence was presented about any standard of care regarding CAMC's duty to warn. Dr. Long, the appellants' only expert witness, testified that he had no opinion with respect to any negligence on the part of anyone at CAMC.[5]

### III

■ Our traditional standard for determining when summary judgment should be

granted is stated in Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963):

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syl. pt. 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); Syl. pt. 2, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994); Syl. pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. .706, 421 S.E.2d 247 (1992).

Rule 56(c) [1978] of the *W.Va.R.Civ.P.* provides, in pertinent part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

We recently clarified the application of our long standing principles regarding summary judgment in *Williams, supra* and *Painter, supra.* Syl. pt. 2, *Williams* states:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 3, *Williams* states:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attached by the moving party, (2) produce additional evidence showing the existence of a genuine issue

**5.** The record does not clarify the relationship between CAMC and Dr. Amores, Mr. Neary's surgeon during the February 11, 1991 procedure. Syl. pt. 7, *Cross, supra,* discussing a hospital's liability on a consent issue when the physician is privately retained, states:

> When a patient asserts that a particular method of medical treatment, such as surgery,

was performed by the patient's privately retained physician without the patient's consent, the hospital where that treatment was performed will ordinarily not be held liable to the patient upon the consent issue, where the physician involved was not an agent or employee of the hospital during the period in question.

for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

■ When the principles of summary judgment are applied in a medical malpractice case, one of the threshold questions is the existence of expert witnesses opining the alleged negligence. *See W.Va.Code* 55–7B–7 [1986], *supra* note 2. The expert opinion is required in this case because, as the circuit court correctly determined, the doctrine of *res ipsa loquitur* does not apply. In this case, the Nearys' expert had no opinion concerning any alleged negligence. Given that no expert opinion was presented in this case, a case which requires an expert to establish the standard of care and CAMC's alleged failure to meet such standard, we find that there was "no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, in part, *Aetna, supra.*

For the above stated reasons, the decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired Justice and FOX, Judge, sitting by temporary assignment.