**FILED**

**October 29, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Kevin Hamon,**
**Plaintiff Below, Petitioner**

**vs.) No. 20-0841** (Monongalia County 17-C-130)

**John L. Morris, M.D.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kevin Hamon, by counsel William S. Adams and Brianna McCardle, appeals the September 24, 2020, order of the Circuit Court of Monongalia County that granted summary judgment to respondent John L. Morris, M.D., in petitioner's medical malpractice action. Respondent, who is represented by Caleb B. David and David L. Shuman, responds in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 28, 2015, petitioner Kevin Hamon had an appointment with a surgeon for evaluation of a painful mass on petitioner's left heel. The surgeon found that petitioner had big toe hypersensitivity on the left foot and difficulty walking and standing. On February 26, 2015, the surgeon performed an elective heel spur surgery on petitioner. Respondent John L. Morris, M.D., served as the anesthesiologist during the surgery.

Immediately following the surgery, petitioner told respondent that he was in extreme pain. Petitioner later testified,

"Yeah, I was in the – if I remember right, I was in the recovery room and [respondent] walked by. And I said I was in a lot – extreme – a lot of pain. And he said, 'Well, do you want me' – 'do you want me to put a nerve block in your leg? And I said, 'Yeah.'"

A nurse in the recovery room at the time noted in petitioner's chart that petitioner "spoke with [respondent who] will do popliteal block" [1] and "[respondent] in [t]o talk to pt about popliteal block. Patient s[t]ill want to go thru with block." The nurse later testified that she documented petitioner's consent to the nerve block on a "Universal Protocol Checklist for Left Popliteal Nerve Block" as she was the witness to the discussion between respondent and petitioner regarding the nerve block, and petitioner's consent to the nerve block. The nurse also testified that once a patient confirms a nerve block procedure, there are three "time-outs" before the procedure. The nurse described the timeouts as follows: During the first timeout, she asks the patient (1) to verify his or her name and birthdate, (2) the part of the body that will be worked on, and (3) the type of procedure to be performed. The second time- out is the anesthesia timeout. Lastly, during the third time-out, the patient is again asked to confirm that he understands the procedure and where it will be performed on the body. Following the timeouts, respondent injected a post-operative nerve block into petitioner's popliteal fossa.

Petitioner later sued respondent alleging medical negligence under the West Virginia Medical Professional Liability Act ("MPLA"). Petitioner alleged that the nerve block performed by respondent caused petitioner to have a permanent and severe neurological injury, i.e., complex regional pain syndrome or "CRPS." Specifically, petitioner alleged that during the popliteal nerve block, respondent breached the standard of care and, as a direct and proximate result, petitioner suffered rapid deterioration of his neurological and pain condition and progression of his pain/injury process; severe physical pain and suffering; emotional pain and suffering; loss of enjoyment of life; future pain, distress, and losses, along with other liquidated and unliquidated damages; past, present, and future lost income; and past, present, and future medical expenses. During the course of this action, petitioner asserted that he did not and could not consent to the nerve block as he was recovering from the effects of general anesthesia from his heel surgery and was under the influence of sedating medications. Petitioner also claimed that respondent presented no documentation showing that petitioner gave informed consent to the nerve block; however, petitioner's amended complaint does not contain a claim for failure to obtain informed consent for the nerve block.

Petitioner retained two expert witnesses: Jeffrey A. Rumbaugh, M.D., Ph.D., and Tom Mitros, M.D. In his deposition, Dr. Rumbaugh testified that he was not offering any opinion on the standard of care from an anesthesiology standpoint. Specifically, Dr. Rumbaugh said,

> Well, with regards to, you know, the diagnosis and management of peripheral nerve injury or C[omplex] R[egional] P[ain] S[yndrome], I think I may be able to offer some opinion on the standard of care for that, but with regards to performing nerve blocks and that sort of thing, which I don't do, I probably would not offer a standard of care on that.

---

[1] A popliteal nerve block is a shot of numbing medicine designed to lessen pain after certain foot or ankle surgeries. The nerve block goes into the popliteal fossa, a diamond-shaped spot at the back of the knee and numbs the sciatic nerve which runs down the back of the leg. *See Learning About a Popliteal Nerve Block*, Kaiser Permanente, https://healthy.kaiserpermanente.org/health-wellness/health-encyclopedia/he.learning-about-a-popliteal-nerve-block.abq3542 (last visited Sept. 27, 2021).

Respondent asserts that petitioner relied on petitioner's other expert, Dr. Mitros, to establish the standard of care for a nerve block surgery and the breach thereof. Dr. Mitros was questioned as follows:

> Question: So, this says you are going to testify in part that the nerve injury in this area of the popliteal fossa was caused by direct trauma to the nerve by Dr. Morris doing the peripheral nerve block procedure. And it says direct nerve injury by Dr. Morris was below the standard of care. Is that not an opinion on causation?
>
> Dr. Mitros: I didn't write that.
>
> Question: Well, are you going to testify to that effect?
>
> Dr. Mitros: What I'm going to testify to is the neurologist finds that the popliteal nerve – that injury was most likely related to the block, that that shouldn't happen.

Dr. Mitros further testified, "So, here's my opinion in its simplest sense. This patient came in without any kind of an injury and left with it and it's permanent and that shouldn't happen. *And how it happened I can't tell you*." (Emphasis added). Dr. Mitros explained his opinion as follows:

> Question: Do you have an opinion about the manner in which the nerve block was done? I know your opinion is that he placed the needle in the nerve. But do you have other opinions about—
>
> Dr. Mitros: My opinion is that he injured the nerve.
>
> Question: And maybe I jumped to a conclusion. How do you believe he injured the nerve?
>
> Dr. Mitros: I don't know how he did it.
>
> Question: But you know he injured the nerve because Mr. Hamon developed CRPS later on?
>
> Dr. Mitros: Yes. And, you know, three days later he had a very unusual response. I mean, a couple days later he's in excruciating pain.

However, Dr. Mitros also testified that factors other than peripheral nerve blocks can cause severe injuries:

> Question: So, Table 4, postoperative neurological features are more likely to be related to patient and surgical factors than to be related to peripheral nerve blocks at a level 3 in the evidence of documents.

Dr. Mitros: Oh, I agree with that 100 percent. Nerve injuries are much more common for other reasons than blocks. I mean, first of all, the vast majority of patients don't get blocks.

Question: But it's more likely to be due to the surgery than the block.

Dr. Mitros: The majority of patients don't get blocks. So, of course, surgery and positioning are much more frequent causes of nerve injury.

Question: As well as a tourniquet?

Dr. Mitros: As well as a tourniquet.

Finally, Dr. Mitros testified that he does not tell patients about the risk of nerve injury during a nerve block because the likelihood of nerve injury is very rare.

Dr. Rumbaugh (petitioner's other expert) also testified that factors other than a peripheral nerve block can cause CRPS, such as soft tissue injury, a sprained ankle, a surgical procedure, and, although unlikely, use of a tourniquet. Dr. Rumbaugh also said that he had never seen CRPS come from a popliteal nerve block.

The surgeon who performed petitioner's heal spur surgery testified that several aspects of a heal spur excision can cause nerve damage, including traction of the skin, inadvertently cutting with a scalpel, inadvertent trauma using an osteotome (a chisel-like instrument to remove bone), and use of a tourniquet during surgery. The surgeon further testified that he used a tourniquet during petitioner's surgery which, according to the record, appears to have taken about thirty minutes. The surgeon opined that "a tourniquet can limit blood flow, but for minor outpatient operations like [petitioner's heal spur excision], typically you don't see too many problems with tourniquets. It's when the tourniquets are on for more than two hours that the blood supply, the nerve conduction can really be limited."

Dr. Robert Bolash, M.D., a pain management physician, testified that both the application of a tourniquet and a heal spur surgery can cause CRPS.

Prior to the final pretrial hearing in this case, respondent filed a motion for summary judgment asserting two grounds for relief: (1) Petitioner failed to produce expert witness testimony to show that respondent breached the applicable standard of care. Instead, petitioner appeared to rely on the doctrine of *res ipsa loquitur* to establish his claims. Respondent contends *res ipsa loquitur* is not applicable in this case. (2) Petitioner's informed consent claim fails as a matter of law given that petitioner's expert witness testified that he does not believe that the risk of nerve injury should be disclosed during the informed consent process for a nerve block because it is so rare an occurrence. Petitioner responded with a partial motion for summary judgment regarding respondent's informed consent for a popliteal nerve block.

At a September 8, 2020, hearing, the court heard argument on the parties' motions. The court denied petitioner's motion for partial summary judgment finding that there were genuine

4

issues of material fact regarding petitioner's informed consent claim. Thereafter, by order entered September 24, 2020, the circuit court granted respondent's motion for summary judgment which disposed of petitioner's action in its entirety. Petitioner now appeals the September 24, 2020, order.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

On appeal, petitioner first argues that the circuit court committed reversible error in granting respondent's motion for summary judgment because petitioner presented sufficient expert testimony to show that genuine issues of material fact existed in relation to the applicable standard of care and respondent's breach thereof. Specifically, petitioner contends that his expert witness's testimony, along with the other evidence presented in relation to respondent's motion for summary judgment, was sufficient to show that genuine issues of material fact existed in relation to the standard of care required for the performance of popliteal nerve blocks and respondent's breach of that standard of care.

Petitioner notes that respondent relied on the testimony of Dr. Mitros. Petitioner contends that the questioning of Dr. Mitros was designed to elicit an opinion on causation and not on the standard of care. Petitioner also notes that Dr. Mitros testified that (1) he was relying on petitioner's expert neurologist regarding causation; and (2) a nerve injury during a nerve block "should not happen" and is, therefore, a deviation from the standard of care. Petitioner highlights that Dr. Mitros demonstrated respondent's breach of the standard of care when he said that respondent "injured [petitioner's] nerve" during the nerve block and that petitioner's permanent injury "shouldn't have happened." Petitioner contends that, even though his own counsel may have failed to ask the correct questions to elicit Dr. Mitros's ultimate opinion during the deposition, if the matter had proceeded to trial, petitioner would have presented Dr. Mitros's testimony regarding the standard of care and respondent's breach thereof. Finally, petitioner contends that, during the final pre-trial hearing, counsel for both sides agreed that Dr. Mitros testified that respondent's treatment of petitioner was negligent. Petitioner avers that this evidence was sufficient to overcome respondent's summary judgment motion.

Petitioner also notes that, prior to the pretrial hearing, he attempted to supplement his response to respondent's motion for summary judgment by including the portions of Dr. Mitros's deposition testimony wherein Dr. Mitros said that respondent's conduct was negligent. Petitioner asserts that the trial court did not consider petitioner's supplement because he was late in filing it. Petitioner argues that the trial court should have considered his supplement because it would have afforded him the benefit of all inferences as required by Rule 56(c) of the West Virginia Rules of Civil Procedure. Petitioner highlights that he also cited to his expert witness's disclosure, screening certificate of merit, and notice of claim in response to respondent's motion for summary judgment. Finally, petitioner admits that respondent countered that those documents should not be considered on a motion for summary judgment under West Virginia Code § 55-7B-6(j).

West Virginia Code 55-7B-6(j) provides:

Notwithstanding any other provision of this code, a notice of claim, a health care provider's response to any notice of claim, a screening certificate of merit, and

5

the results of any mediation conducted pursuant to the provisions of this section are confidential and are not admissible as evidence in any court proceeding unless the court, upon hearing, determines that failure to disclose the contents would cause a miscarriage of justice.

Under Rule of Civil Procedure 56(c) and *Cavender v. Fouty*, 195 W. Va. 94, 464 S.E.2d 736 (1995) petitioner's expert witness's disclosure, screening certificate of merit, and notice of claim generally may not be considered substantive evidence in considering respondent's motion for summary judgment. Nevertheless, petitioner argues that the circuit court should have (1) considered those documents in light of petitioner's other evidence, and (2) given petitioner the benefits of all inferences from them.

Petitioner next argues that his expert witness testimony and the other evidence he presented in response to respondent's motion for summary judgment was sufficient to show that genuine issues of material fact exist in relation to the standard of care required for informed consent and the breach thereof. Petitioner cites to the following testimony in support:

Question: . . . So, just because it isn't in the record doesn't mean it didn't happen; isn't that true?

. . . .

Dr. Mitros: If it's not in the record, it didn't happen.

. . . .

Question: . . . What happened to the hospital's copy of the informed consent document that Dr. Morris said he prepared and had [petitioner] sign, what happened to that?

Dr. Mitros: It doesn't exist.

Question: Well, the document itself, does not make informed consent does it?

Dr. Mitros: The document – the document is evidence that it occurred and is part of the standard of care to have a written consent. And the written consent for the consent process, itself, should only occur when a patient is cognitively normal. This patient was not cognitively normal.

Question: But the consent form[] itself does not make informed consent, does it.

Dr. Mitros: The document's the informed consent.

Question: But the informed consent is the information provided to the patient by the physician?

Dr. Mitros: Right. And this patient can't remember any information that was provided to him. . . . And my biggest objection to all of this is, this is a cognitively impaired patient who could not give informed consent. And that is a black and white issue. So, if by some chance he was told what the positives and negatives of this block were, he had no way to cognitively assimilate that information.

Petitioner argues that this testimony shows that he presented sufficient expert testimony to show the standard of care in relation to informed consent. Petitioner further argues that respondent failed to obtain informed consent with regard to the nerve block because he was unable to consent. Thus, petitioner contends that the circuit court erred in granting respondent's motion for summary judgment on the ground that petitioner produced no expert testimony to establish the standard of care regarding informed consent.

We disagree with petitioner's arguments and find that the circuit court did not err in granting summary judgment to respondent. In the order on appeal, the circuit court found that (1) petitioner failed to produce expert witness testimony establishing a breach of the standard of care, and (2) petitioner could not rely on the doctrine of *res ipsa loquitur* to establish negligence against respondent. The circuit court also found that (1) petitioner failed to assert a claim for a lack of informed consent in his amended complaint, and (2) even if he had made such an assertion, respondent was entitled to summary judgment because petitioner failed to establish a causal relationship between the alleged failure to disclose the possibility of a nerve injury and the injury petitioner suffered. Specifically, the court found that because petitioner's expert witness did not believe the disclosure of a potential nerve injury was required to obtain informed consent, petitioner could not establish that a reasonable person would have refused the popliteal nerve block if he had been informed of the risk of a nerve injury. Thus, the circuit court properly granted summary judgment to respondent on petitioner's unasserted "lack of informed consent" claim.

*Petitioner failed to establish a breach of the standard of care.* Petitioner claims he produced sufficient expert testimony to show that respondent breached the standard of care. Petitioner bases this argument on respondent's phrasing of deposition questions to Dr. Mitros, the testimony regarding causation opinions, and his own speculation on what the experts and treating physician would have testified to at a trial in this matter. That argument fails because petitioner's evidence failed to establish a breach of the standard of care, a primary element of proof required to maintain a medical negligence claim.

To prevail in a medical negligence claim under West Virginia Code § 55-7B-3(a), a plaintiff must prove that:

> (1) The health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstance; and (2) Such failure was a proximate cause of the injury or death.

West Virginia Code § Section 55-7B-7(a) provides, part, that "[t]he applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent

7

expert witnesses if required by the court." "It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Syl. Pt. 1, in part, *Neary v. Charleston Area Med. Ctr., Inc.*, 194 W. Va. 329, 460 S.E.2d 464 (1995) (quoting Syl. Pt. 1, *Farley v. Meadows*, 185 W. Va. 48, 404 S.E.2d 537 (1991)). Thus, in most medical malpractice cases, an expert witness must establish a breach of the standard of care.

Petitioner failed to produce expert testimony establishing a breach of the standard of care. Dr. Rumbaugh testified that he was not offering any opinions on the standard of care from an anesthesiology standpoint. As for Dr. Mitros's testimony, he stated that "how [petitioner's injury] happened, I can't tell" and "I don't know how he did it." Essentially, Dr. Mitros opined that because petitioner entered the hospital without a nerve injury and left with a nerve injury, respondent must have caused the injury. Accordingly, respondent was entitled to summary judgment because no expert testimony created a genuine issue of material fact regarding how respondent failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent anesthesiologist acting in the same or similar circumstances.

*Petitioner cannot rely upon evidence that is not in the record to overcome respondent's motion for summary judgment.* Petitioner's argument that, if the case had gone to trial, he would have presented evidence regarding the standard of care and the breach of that standard, disregards Rule 56(e) of the West Virginia Rules of Civil Procedure, which provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Petitioner's counsel could have set out Dr. Mitros's "full testimony" during his deposition or in an affidavit regarding the standard of care; however, petitioner's counsel failed to do so and also failed to present any expert opinion establishing a breach of the standard of care. Petitioner cannot rely on "expected testimony" to prove the essential element of breach of the standard of care.

Petitioner's claim that Dr. Mitros's use of the word "negligence" during his deposition was sufficient to overcome respondent's motion for summary judgment also fails. Use of that word alone does not establish medical negligence. Instead, to survive a motion for summary judgment, a plaintiff must present expert testimony that, at trial, would establish the following factors found in West Virginia Code § 55-7B-3(a)(1):

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances[.]

Petitioner failed to meet that burden.

Further, petitioner cannot prevail on his argument that if his case had gone to trial, his experts, Drs. Bolash and Wilson, would have testified to a reasonable degree of medical probability that petitioner's CRPS was caused by a direct nerve injury that occurred during the nerve block performed by respondent. Even if petitioner could have presented this testimony at a trial, it would have been evidence of causation and not evidence of a breach of the standard of care. Moreover, petitioner failed to incorporate any such expected testimony into an affidavit or other form of proof for inclusion in the record below in response to respondent's motion for summary judgment. As we have said,

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995).

*Petitioner's notice of claim, screening certificate of merit, and expert witness disclosure are not evidence and, therefore, cannot overcome respondent's motion for summary judgment.* While petitioner argues that the circuit court could have considered his notice of claim, screening certificate of merit, and expert witness disclosure, petitioner failed to assign error to the court's refusal to consider these documents. Thus, he has waived this issue. However, even if he had not waived the issue, his argument fails under West Virginia Code § 55-7B-6(j), which provides that a screening certificate of merit is "not admissible as evidence in any court proceeding" unless not doing so would be a "miscarriage of justice." Here, petitioner did not attempt to establish that admitting petitioner's notice of claim or Dr. Mitros's screening certificate of merit was necessary to avoid a miscarriage of justice.

Petitioner's expert witness disclosure is also not evidence.

> Ordinarily, "[u]nsworn and unverified documents are not of sufficient evidentiary quality to be given weight in determining whether to grant a motion for summary judgment. Therefore, documents that do not state that they are made under oath and do not recite that the facts stated are true are not competent summary judgment evidence." 49 C.J.S. Judgments § 328 (2009).

*Ramey v. Contractor Enterprises, Inc.*, 225 W. Va. 424, 433, 693 S.E.2d 789, 798 (2010). Petitioner's expert witness disclosure is an unsworn and unverified document and, therefore, not competent summary judgment evidence. Therefore, the circuit court properly refused to consider it as evidence.

*Petitioner cannot rely upon the doctrine of res ipsa loquitur to establish medical negligence.* Because petitioner's expert witnesses did not testify as to how respondent breached

the standard of care, petitioner – through Dr. Mitros – relies on the doctrine of *res ipsa loquitur* to establish medical negligence. However, *res ipsa loquitur* is inapplicable to petitioner's claim.

> "'The doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances.' Syl. Pt. 5, *Davidson's, Inc. v. Scott*, 149 W.Va. 470, 140 S.E.2d 807 (1965)." Syl. pt. 2, *Farley v. Meadows*, 185 W.Va. 48, 404 S.E.2d 537 (1991).

Syl. Pt. 2, *Neary v. Charleston Area Med. Ctr., Inc.*, 194 W. Va. 329, 460 S.E.2d 464 (1995); *see also* Syl. Pt. 4, *Foster v. City of Keyser*, 202 W. Va. 1, 501 S.E.2d 165 (1997) ("Pursuant to the evidentiary rule of *res ipsa loquitur*, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.").

Here, *res ipsa loquitur* is inapplicable because respondent's alleged negligence may not be presumed given that (1) Dr. Mitros testified that there are several other potential causes of petitioner's alleged injury, (2) Dr. Rumbaugh testified that he was not aware of a single instance in which CRPS was caused by a popliteal nerve block; and (3) both petitioner's surgeon and Dr. Bolash testified to other causes of CRPS such as a surgical incision, traction of the skin, inadvertent trauma using an osteotome, and the application of a tourniquet. Dr. Rumbaugh's testimony underscores that petitioner could not establish either negligence by respondent or a causal connection between his alleged nerve injury and his CRPS diagnosis. Further, the evidence of record suggests that petitioner's experts did not fully understand the pathophysiology of CRPS and, therefore, could not testify that the nerve block performed by respondent was the cause of his CRPS as opposed to the myriad of other possibilities.

In petitioner's second assignment of error, he argues that the circuit court committed reversible error in granting respondent's motion for summary judgment because the circuit court had already found that genuine issues of material fact existed in relation to petitioner's lack of informed consent claim by denying petitioner's motion for partial summary judgment as to respondent's liability.

> A physician has a duty to disclose information to his or her patient in order that the patient may give to the physician an informed consent to a particular medical procedure such as surgery. In the case of surgery, the physician ordinarily should disclose to the patient various considerations including (1) the possibility of the surgery, (2) the risks involved concerning the surgery, (3) alternative methods of treatment, (4) the risks relating to such alternative methods of treatment and (5) the results likely to occur if the patient remains untreated.

Syl. Pt. 2, *Cross v. Trapp*, 170 W. Va. 459, 294 S.E.2d 446 (1982). "[A] detailed, written consent form, specifying a particular type of treatment and disclosing other relevant medical information, may or may not, depending upon the circumstances, satisfy the patient need standard of disclosure." *Id.* at 473, 294 S.E.2d at 460.

As noted above, petitioner contends that (1) no written consent was obtained from him for the nerve block, and (2) he was unable to consent to the nerve block due to the effects of the general anesthesia and the other sedatives in his system following his heel surgery. Petitioner highlights that Dr. Mitros's expert opinion was that a written consent is required within the standard of care and that the hospital where petitioner's surgery was performed also requires written consent. There is no dispute that there was no written consent for the nerve block in petitioner's medical record.

Petitioner highlights that he deposed an employee at the hospital where petitioner's nerve block was performed, and that the employee testified that the Universal Protocol Checklist did not constitute valid informed consent. Petitioner further highlights that in his deposition testimony, he recalled respondent offering him a nerve block, but remembered nothing else. Finally, petitioner notes that respondent did not have an independent recollection of petitioner, his treatment, or an informed consent discussion. Petitioner admits however that respondent testified that it is his customary practice to discuss a procedure with a patient and to garner informed consent.

Petitioner argues that, to the extent that the court granted respondent's motion for summary judgment on the basis that petitioner failed to amend his complaint to include a claim for lack of informed consent, the court erred because both parties "raised the issue of informed consent during the course of the action, explored the same through discovery, and filed jury instructions on the same." Petitioner further argues that, under Rule 15(b) of the West Virginia Rules of Civil Procedure, he would have been permitted to amend his complaint to include informed consent even after trial and the judgment. Rule 15(b) provides:

> **Amendments to conform to the evidence**. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

We disagree. Petitioner never formally asserted a claim for lack of informed consent despite filing an amended complaint which alleges only one cause of action: medical negligence under the MPLA. Further, petitioner never moved the trial court for leave to amend his complaint by adding a cause of action for failure to obtain informed consent. "The liberality allowed in the

11

amendment of pleadings does not entitle a party to be dilatory in asserting claims or to neglect his case for a long period of time." *Mauck v. City of Martinsburg*, 178 W. Va. 93, 95, 357 S.E.2d 775, 777 (1987). Accordingly, on this record, the circuit court correctly ruled that petitioner failed to properly raise a claim for informed consent. Moreover, petitioner did not include an assignment of error on appeal on this point. *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020) (failure to include an assignment of error in an appellate brief generally precludes review of a question because "a petitioner's presentation of an assignment of error allows a respondent to address the focused issue, confident that he did not fail to discern a determinative argument buried in petitioner's prose"). Thus, his argument fails.

Petitioner also claims that the circuit court erred when it granted summary judgment after finding that petitioner failed to establish a causal link between the alleged failure to obtain informed consent and the alleged injury. However, the record shows that, even if petitioner had properly pleaded a claim of lack of informed consent, he would not have prevailed on the claim. To prevail on a claim of lack of informed consent, a plaintiff must prove "a causal relationship between the physician's failure to disclose information to his patient and damage to the patient." *Cross*, 170 W. Va. at 465, 294 S.E.2d at 452. The Court has adopted the following objective test to determine whether a causal relationship exists:

> In cases applying the doctrine of informed consent, where a physician fails to disclose the risks of surgery in accordance with the patient need standard of disclosure and the patient suffers an injury as a result of the surgery, a causal relationship, between such failure to disclose and damage to the patient, may be shown if a reasonable person in the patient's circumstances would have refused to consent to the surgery had the risks been properly disclosed.

Syl. Pt. 3, *Adams v. El-Bash*, 175 W. Va. 781, 338 S.E.2d 381 (1985). Petitioner's expert, Dr. Mitros, testified in his deposition that he does not mention the risk of nerve injury to his patients when performing a popliteal nerve block because of the rarity of such an injury. Given that petitioner's own expert does not disclose the risks of nerve injuries from popliteal nerve blocks, petitioner fails to demonstrate that a reasonable person in petitioner's circumstances would have refused to consent to the nerve block. Thus, petitioner failed to establish a genuine issue of material fact concerning a causal relationship between respondent's alleged failure to obtain informed consent and the injury alleged. Accordingly, due to the lack of evidence regarding causation, the trial court properly granted respondent's motion for summary judgment.

Finally, petitioner contends that when the circuit court denied his motion for partial summary judgment on the informed consent question, it effectively found the existence of genuine issues of material fact. However, petitioner's motion centered on the question of whether respondent had breached his duty to obtain informed consent, and petitioner offered evidence to suggest the existence of questions of fact on the issue of breach of duty. The circuit court agreed with petitioner that questions of material fact existed regarding whether respondent breached his duty to secure informed consent. Petitioner asserts that the circuit court (1) was bound to this ruling which was in his favor, and (2) could not have properly granted summary judgment to respondent on the informed consent claim. However, as we noted earlier, an informed consent claim requires proof of both a breach of the duty and causation. *Id.* We find that the circuit court's denial of

petitioner's motion for partial summary judgment concerning respondent's duty does not negate the circuit court's ultimate conclusion: Petitioner failed to present a genuine issue of material fact on the issue of causation, that is, whether petitioner's alleged lack of informed consent caused him to consent to the procedure and thereby caused his injury. As noted above, the record supports the circuit court's conclusion that petitioner failed to offer any proof on the causation requirement. We therefore see no conflict in the circuit court's decision to deny petitioner's motion for partial summary judgment while granting respondent's motion.

Accordingly, for the foregoing reasons, we affirm the circuit court's September 24, 2020, order granting summary judgment to respondent.

Affirmed.

**ISSUED:** October 29, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton